Jodie BARNES, Plaintiff,

v.

**Richard BYRD, Floyd Clark, James Ross, Gerald Thompson and Bobby Joe Barnes, Defendants.**

No. C–79–414.

United States District Court,
E. D. Washington.

April 15, 1981.

694

Debi Perluss, Norman McNulty, Spokane Legal Services, Spokane, Wash., for plaintiff.

Angelo R. Petrus, Asst. Atty. Gen., Olympia, Wash., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.

QUACKENBUSH, District Judge.

Plaintiff brought this action to vindicate an alleged deprivation of rights secured by the 13th and 14th Amendment and remedied through 42 U.S.C. §§ 1985(3) and 1983 respectively. The Defendants are Department of Social and Health Services' (DSHS') caseworker Richard Byrd, Plaintiff's husband at the time Bobby Joe Barnes—both sued in their individual capacity—and Defendants Clark, Ross, and Thompson, Byrd's supervisory chain of command—sued in their official capacities. Plaintiff charges the Defendants with conspiring to give physical custody of the family's infant daughter to her husband. All Defendants have moved for summary judgment of dismissal with the DSHS Defendants asserting their entitlement to qualified good faith immunity in addition to the general defense of the lawfulness of their actions.

The following facts are undisputed. Within a month after birth of the child to Plaintiff and Defendant Bobby Joe, DSHS for Spokane County Washington received a report that the infant was abused by Plaintiff. DSHS took the infant into state custody for shelter care and filed a dependency petition with the court alleging the abuse.[1] Plaintiff and her husband requested a shelter care hearing and a court appointed counsel. Both requests were granted.[2]

---

1. The law requires one to report circumstances that indicate a child's health, welfare, and safety is endangered. RCW 26.44.010, DSHS is required by law to investigate and act upon such a report. RCW 26.44.050. The shelter care custody and dependency petition proceedings are based upon the statutory definition of "dependent child" as one who is abused, as defined by RCW 26.44, or who has no parent "capable of adequately caring for the child such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development. RCW 13.34.030. See also, RCW 26.09 et seq., 26.27 et seq. A child taken into custody under RCW 13.34.050 because abused is immediately placed in shelter care. RCW 13.-34.060.

2. If the parents request a shelter care hearing, the court is required to hold it and appoint counsel and a guardian ad litem for the child. RCW 13.34.060; 13.34.100. This was done. The parent(s) are parties to the shelter care and

Both parents, represented by counsel, appeared and testified. Defendant Byrd, who was assigned the case, presumably also testified. Superior Court Judge Merryman issued a shelter care order dated October 17, 1979 in Spokane County Superior Court action No. 00344–1.

On December 15, 1979, Defendant Bobby Joe separated from Plaintiff and moved to Colorado. To permit Plaintiff to take the infant to Colorado and attempt a reconciliation of the marriage, DSHS moved to dismiss the dependency petition. The following day, December 30, 1978, the mother took the child to Colorado.[3] The reconciliation attempt failed. Plaintiff returned with the infant to Spokane.

Again, acting upon a report, DSHS, through Byrd, filed another dependency petition and took the child into custody. This time, however, Plaintiff did not request a shelter care hearing. The court on its own motion, based on the finding that the "mother had previously injured the child and that there was reason to believe it may happen again," ordered shelter care custody and appointed a guardian ad litem. On April 5, 1979, one day before the expiration of the statutory 30 day limitation on shelter care orders, the court extended the prior order. Plaintiff did not contest that order.

The dependency petition hearing was set for April 17, 1979. Both parents received notice and requested counsel. Defendant Byrd filed his predisposition study on April 6, 1979, as he was required to do.

Judge Merryman, who had presided over the hearing in action No. 00344–1, presided over the April 17 hearing. Defendant Byrd testified that the father was present and able to provide adequate care and supervision. Therefore, the infant no longer met the definition of dependent under the statute, R.C.W. 13.34.030, and DSHS, through the assistant Attorney General, moved to dismiss the petition.[4] The State's attorney advised the court that the father scheduled a return flight to Colorado and was prepared to take the child.

Plaintiff did not appear personally at this hearing.[5] However, her counsel attacked the dependency petition upon grounds that it simply realleged the first petition's foundation. Counsel then advised the court that dismissal of the petition would be tantamount to giving the father physical custody of the child in Colorado. Counsel informed the court that the father had filed a dissolution action in Colorado but the mother had not yet been served in that action. Counsel stated that the mother did not object to the dismissal of the petition but did object to the result following such dismissal, i. e. custody in the father. Counsel characterized this result as the state choosing sides to favor the father with custody.

The court rejected counsel's invitation "to order custody" and refused "to interfere" and "police a divorce case between the parties". The court concluded that, since DSHS believed that it had no case to support "dependency", the court should conse-

---

dependency petition hearings and may file responsive pleadings. RCW 13.34.050; 26.09.-180–.200; 26.09.270.

3. Although the exact timing of the interstate contact is unclear, it is apparent that Byrd or someone from DSHS contacted their sister agency in Colorado to monitor the child's welfare. Washington and Colorado have enacted the protections of the Uniform Child Custody Jurisdiction Act. The Washington statute is at RCW 26.27 et seq.

4. The basis for physical custody in the state is that the child has no parent willing and capable of adequately caring. RCW 13.34.030(2)(c).

The court is, therefore, required under RCW 13.34.060(6) to release the child to a parent unless the court finds there is reasonable cause to believe that "(a) the child has no parent . . . to provide supervision and care for such child."

5. It is clear that Plaintiff knew of the time and place of the hearing and the requirement to personally appear. RCW 13.34.070. Her counsel at oral argument before this court justified the failure to appear upon grounds that, at some earlier date, obviously long before the April 17 hearing, Plaintiff's husband took the family car. If the scheduled time was unsuitable, Plaintiff could have moved for a continuance. RCW 13.34.070(1).

quently dismiss the petition.[6] *The Judge ordered the petition dismissed.* See, CR # 55, Plaintiff's Memorandum Exhibit 1, Reporter's Transcript Spokane County Superior Court.

When she received notice in late April of her husband's action in Colorado for legal custody, Plaintiff sued in Spokane for dissolution of the marriage and custody of the child. On July 6, 1979 Plaintiff was awarded temporary legal custody of the child. Subsequently, the Colorado court determined that Washington, and not Colorado, had jurisdiction under the Uniform Act. Therefore, the Colorado Court ordered the child returned to the physical and, by that time, temporary legal custody of the mother.

Plaintiff charges the Defendants acted ultra vires in deciding to dismiss the dependency petition. That decision, she urges, violated her constitutional right to family integrity, due process, and equal protection of the laws. Plaintiff has not attacked either the legislative scheme or the court authority prescribing and circumscribing the above results. Plaintiff has not charged that DSHS, or these Defendants, followed a policy, practice, or custom to do what she claims was done in this instance. Plaintiff apparently accepts the decision to discharge the first dependency petition to permit her to remove the child to Colorado. Her complaint focuses specifically upon alleged concerted action to dismiss the petition so that the father might remove the child to Colorado. The suit essentially is a re-assertion of the contentions raised in the April 17, 1979 hearing but with federal jurisdiction invoked by allegations of constitutional deprivation.

■ The doctrines of res judicata and collateral estoppel apply in federal civil rights proceedings to give claim or issue preclusion effect to adjudications in state court. *Allen v. McCurry*, —— U.S. ——, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Scoggin v. Schrunk*, 522 F.2d 436 (9th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976); *Francisco Enterprises v. Kirby*, 482 F.2d 481 (9th Cir. 1973), *cert. denied*, 415 U.S. 916, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974). The factual underpinnings related to Plaintiff's abuse of the child, the Defendant's legal duty to take the child into shelter care and to file a dependency petition were before the state courts on the occasions cited. Plaintiff was a party to those proceedings and had ample opportunity to fully and fairly litigate the questions involved. In the April 17, 1979 dependency petition hearing Plaintiff's counsel contested, in substance, the right of the agency to dismiss a petition being aware that the result would be removal of the child from the jurisdiction. Nevertheless, the Judge, ordered the petition dismissed. The issue and claim preclusion effect of this prior litigation would prevent Plaintiff from relitigating the questions of factual validity of abuse or factual basis for shelter care custody and dependency petitions or Defendants' authority or lawful discretion to decide to move to dismiss the dependency petition knowing the given result. Furthermore, the issues underlying the defense of good faith immunity in this action would be unassailable on these grounds alone. Plaintiff would not be entitled to take this case to a jury. But there are more compelling reasons for granting summary judgment in this case.

■ Plaintiff argues that the Defendants action represents an intentional interference in her protected right to family integrity. That argument asserts too much under these facts. Here, we are concerned

---

**6.** Counsel for the agency argued that the mother, objecting in essence to the removal of the child from the state at that moment, had taken no prior action to determine which parent had legal and physical custody of the child. In fact, until the father's filing in Colorado, no petition for legal separation or for dissolution had been filed and no arrangements as to the custody of the child had been made. See, RCW 26.09.-020(1)(e); 26.09.050. In this context either party can move to prevent the other from removing the child from the jurisdiction. Otherwise, upon separation Plaintiff could have entered into an agreement with the father providing for child custody. RCW 26.09.070. Plaintiff did nothing in this regard. Also, having consented to the dismissal, Plaintiff could not appeal the order.

with what right one parent may have when the wishes of that parent and those of the other parent are in conflict and the child is between so that the child's best interests are served with a resolution in favor of one parent. Assuming the Defendants jointly decided to dismiss the petition, not every agency decision, however serious the impact, automatically involves due process protections. See, *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). The decision imposed no sanction upon Plaintiff. If it deprived her of anything at all, the decision deprived Plaintiff of an individualized interest in the temporary physical custody of the child—an interest which actually had been significantly narrowed by prior court order placing the child in shelter care custody.

■ This state action is significantly different from a state's attempt "to force the breakup of a natural family over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest" without adequate recognition and protection to the parental rights. *Smith v. Organization of Foster Families*, 431 U.S. 816, 862–63, 97 S.Ct. 2094, 2119, 53 L.Ed.2d 14 (1977) (Stewart, J. concurring). The government did not rupture the integrity of the family unit. That rupture was incident to the parents' decisions. Contrary to Plaintiff's characterization of the plain facts, DSHS Defendants did not withhold the infant child, properly taken into temporary custody, from their mother without judicial authorization, compare, *Duchesne v. Sugarman*, 566 F.2d 817, 828 (2nd Cir. 1977), nor frustrate the remedy in an active case, compare, *Morrison v. Jones*, 607 F.2d 1269, 1276 (9th Cir. 1979), cert. denied, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980).

The statutory duty of the Defendant(s) in fact required the decision to move to dismiss the petition under a reasonable belief that a parent willing and able to provide care to the child was present in the jurisdiction and returning to a jurisdiction in which contacts had been established to protect interests in the child's welfare. DSHS fears for the welfare of the child with the mother were obviously not groundless and whether that belief was ultimately correct is not the issue in this case. Moreover, DSHS, as Plaintiff asserts, had the consent of one parent in taking the decision to dismiss. Plaintiff herself, through counsel, consented to the dismissal.

■ The due process clause of the 14th Amendment applies where state action deprives one of a liberty interest. Plaintiff asserts the denial of due process and equal protection. Therefore, the Court should examine the nature of the claimed interest. *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

■ To obtain a protectible right, "a person clearly must have more than an abstract need or desire for it." *Id.*, 577, 92 S.Ct. 2709. Our first question, therefore, is whether Plaintiff had more than a "unilateral expectation" of custody. "[She] must, instead, have had a legitimate claim of entitlement to it." *Ibid.* But state law gave her no entitlement and there is no constitutional or inherent right of a parent to the temporary physical custody of her child while the legal custody is in both parents. This interest does not resemble the substantial interest in the privacy realm of "family" life and in the permanent deprivation of a cohesive family unit. What each parent has is a conditional liberty interest dependent upon the determination of a court or upon an agreement between the parents sanctioned by a court concerning custody. At that time the individualized interests of each parent disappears and the integrated and stabilized family unit entitled to constitutional protections is reestablished.

■ Even were Plaintiffs entitled to procedural safeguards afforded to protect substantive aspects of liberty, she would have no colorable claim of a deprivation accompanied by a denial of due process. Plaintiff does not contest the due process legislated regime applicable to these circumstances.

Absent that attack Plaintiff must accept the result here for it occurred with all the process due her. See, *Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972); *Stanley v. Illinois*, 405 U.S. 645, 650–51, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). She was aware of her rights to shelter care hearings; she knew of her right to an attorney; she was summoned to personally appear at the dependency hearing; a hearing was held at which her attorney appeared and she did not; and at this hearing, the court, aware of the premises, adjudicated.

■ DSHS' action to withdraw its custodial intervention appears rationally connected to the state's interest in protecting the health and welfare of infant children. Such a course of conduct can scarcely be described as arbitrary. Plaintiff's due process claims are, consequently, untenable.

■ Plaintiff's reliance upon the equal protection guaranty of the 14th Amendment is likewise unfounded and untenable. Plaintiff has not established the existence of any suspect classification or the deprivation of any fundamental right. No sanction was imposed by dismissing the petition. Plaintiff lost no right. She may have lost an expectation but DSHS' action was quite rationally related to the objective of the infant's welfare. Such concern with the health and welfare of a child cannot be described as impermissible. Thus, the contention that the decision to place the child into the hands of a consenting parent established an impermissible classification is without merit. The classification was established by the facts that Plaintiff on two occasions had been reported as abusing her child, that the courts on at least two occasions deemed Plaintiff incapable of adequately caring, and that Plaintiff was absent at a crucial time when her counsel consented to dismissal of the petition based upon the presence of a capable and consenting parent. Plaintiff had the opportunity to show that custody elsewhere would not have been in the child's best interest. Where the two parents are not in fact similarly situated in the area covered by an administrative judgment, the equal protection clause is not violated.

It must be remembered that there are not two but three interests at stake: the mother's, the father's and the infant's. If the agency were required to retain custody of the child until the Plaintiff sought an adjudication of custody or if one parent withheld consent to custody in the other, the child would remain in shelter care. Thus, concerns humane as well as practical abundantly support the agency's decision. Under a sex-neutral decision the outcome of this case would have been the same. There is no support for the claim that Plaintiff was discriminated against because she was a female or a mother. In sum, the due process and equal protection claims are insubstantial.

■ Plaintiff proceeds against Defendant Byrd's supervisors in their official capacity. That is tantamount to asserting a claim for damages against the state, a result which is prohibited by the 11th Amendment and the judicial construction of 42 U.S.C. §§ 1983, 1985. Moreover, Plaintiff has not raised a genuine issue of material fact as to the supervisory Defendants' liability. She does not assert nor establish that Defendant Byrd acted in accordance with the official policy or customary practice of the department to conspire with one parent against the custodial potential of another. Byrd's superiors cannot be held responsible under an assertion that Byrd acted under the authority of the department. That is merely an allegation of agency and it is insufficient to support a claim against these Defendants.

■ The claims against the father must also fail. There are no facts to show that his actions were anything but innocent and well intentioned. The claim against the father is also legally unsound. The father could not join in the DSHS decision to move to dismiss the petition. His parallel consent to participate in the benefits of such a decision would not be unlawful for he had a right to do that. The father was as much entitled to the physical custody of the child

as the mother. Without the father and the supervisory Defendants in this action, Plaintiff's claim of a conspiracy must fail. Only Defendant Byrd would remain. Whatever motives Defendant Byrd may have had, and no unlawful motivations have been disclosed, he could not proximately cause any injury.

The Superior Court summoned the father's presence at the hearing. With his presence the law required the conclusion that the child was not dependent. The state, therefore, had to dismiss the petition. Plaintiff had not taken any steps to determine legal custody. The state certainly had no duty to retain custody and it was instead bound to relinquish the child. The agency did not conceal or withhold the child. The Court and the operation of the law in the circumstances of the case determined the result.

For the above reasons, Defendants' motions for summary judgment of dismissal are GRANTED and the claim is dismissed with prejudice.