[No. 27101-6-I.   Division One.   September 3, 1991.]

EDWARD L. JONES, *Appellant,* v. THE UNIVERSITY OF WASHINGTON, ET AL, *Respondents.*

*Norman W. Cohen* and *Cohen & Keith-Miller, Inc. P.S.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Michael F. Madden, Assistant,* for respondents.

SCHOLFIELD, J. — Edward Jones appeals the trial court's partial summary judgment dismissing some but not all of his claims. We affirm in part and reverse in part.

## FACTS

On August 5, 1988, Jones filed his complaint against the University of Washington, the Board of Regents, William Gerberding (President of the University of Washington), George Beckmann (Provost of the University of Washington), Ernest Henley (former Dean of Arts and Sciences), and Joseph Scott (Chairman of the Department of Ethnic Studies). Jones alleged that his termination from his position as a lecturer in the Department of Ethnic Studies in 1987 constituted discrimination on the basis of age and race.

Jones alleged further that the University committed various other acts from 1972 through 1987 constituting discrimination on the basis of age and race, including requiring him to perform clerical duties that others similarly situated were not required to do, not giving him opportunities for promotion, and subjecting him to verbal abuse. Jones also alleged that at all times material his job performance met or exceeded all reasonable standards expected of him.

As part of the complaint, Jones alleged in paragraph 31 as follows:

31. All conditions precedent to prosecution of this suit have been waived, satisfied or fulfilled.

Approximately 19 days later, on August 24, 1988, Jones filed his verified claim pursuant to former RCW 4.92.100 with the state office of risk management.

In their answer to Jones' complaint, the defendants alleged, *inter alia*, that Jones had failed to comply with the requirements of RCW 4.92.

On January 17, 1989, Jones submitted his interrogatories to the defendants. Among them were these requests:

INTERROGATORY NO. 60: Addressing the Defendants' answer and affirmative defenses please identify individually and in detail the factual basis of Defendants' denials to each individual paragraph of Plaintiff's complaint. State individually by paragraph and by Defendant what evidentiary facts Defendant knows of that support such denials.

INTERROGATORY NO. 61: What is the name, address, phone number and other means of identification of each person who knows of any evidentiary facts to support or tend to support such denials?

INTERROGATORY NO. 63: If you know of any documentary evidence supporting or tending to support any of your denials or affirmative defenses please identify such document with specificity to support both a motion to produce and a Subpoena Duces Tecum. Please state: (a) the name, address, telephone number and other means of identification of any person who has in his or her care, custody or control any form of documentary evidence; (b) the substance of each documentary;

INTERROGATORY NO. 73: If you know of any item of documentary evidence supporting or tending to support any denial you have made in your answer, or supporting or tending to support any of your affirmative defense[s], please identify each item with specificity sufficient to support a request to produce or Subpoena Duces Tecum and state . . .

REQUEST FOR PRODUCTION NO. 1: Plaintiff requests that you and your attorney produce all documents, photographs, papers . . . supporting any denial or affirmative defense . . .

REQUEST FOR PRODUCTION NO. 2: Plaintiff requests that you and your attorney produce any and all documents which, in Defendants' view, have any bearing on Plaintiff's allegations or Defendants' response thereto.

The State responded to interrogatory 60 regarding paragraph 31 (dealing with conditions precedent to suit) with the following statement:

Paragraph 31: Plaintiff failed to exhaust his administrative remedies, including but not necessarily limited to his right to a final decision in an adjudicative proceeding under *University Handbook* Volume II, Chapter 28. See also ch. 28B.19 RCW.[1]

On September 14, 1990, apparently after the statute of limitations had run, the State filed a motion for summary judgment, based on Jones' failure to comply with former RCW 4.92.110 by filing his verified claim 2 weeks after filing the lawsuit. On October 12, 1990, the trial court granted the State's motion for summary judgment as to all claims sounding in tort and arising under state law. However, the trial court's ruling did not affect Jones' federal civil rights claims. *See Felder v. Casey*, 487 U.S. 131, 101 L. Ed. 2d 123, 108 S. Ct. 2302 (1988).

This appeal timely followed.

## RCW 4.92.110

Jones argues that summary judgment was improper because he filed a verified claim as required by former RCW 4.92.110 before the expiration of the statute of limi-

---

[1] Former RCW 28B.19 was the State Higher Education Administrative Procedure Act, repealed effective July 1, 1989.

tations and because the State waived its right to assert RCW 4.92.110 as a defense by failing to disclose its knowledge of Jones' error prior to the running of the statute of limitations.

■ A summary judgment motion may be granted under CR 56(c):

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*See also Herskovits v. Group Health Coop.*, 99 Wn.2d 609, 664 P.2d 474 (1983). The court must consider the evidence in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 503 P.2d 108 (1972). On review of an order granting summary judgment, the appellate court must "engage in the same inquiry as the trial court." *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

Former RCW 4.92.110 read as follows:

> No action shall be commenced against the state for damages arising out of tortious conduct until a claim has first been presented to and filed with the risk management office. The requirements of this section shall not affect the applicable period of limitations within which an action must be commenced, but such period shall begin and shall continue to run as if no claim were required.

In *Hunter v. North Mason High Sch. & Sch. Dist. 403*, 85 Wn.2d 810, 539 P.2d 845 (1975), the Washington State Supreme Court invalidated a different "nonclaim" statute, former RCW 4.96.020, which stated that:

> [c]laims against [governmental] entities for damages arising out of tortious conduct shall be presented to and filed with the governing body thereof within one hundred twenty days from the date that the claim arose.

*Hunter*, at 811 n.1. The *Hunter* court held that the statute denied equal protection of the law by creating two classes

of tort victims and tortfeasors, governmental and non-governmental, and placed a substantial burden on the right of one class to bring an action. *Hunter*, at 813-15.

In *Peterick v. State*, 22 Wn. App. 163, 589 P.2d 250 (1977), *review denied*, 90 Wn.2d 1024 (1978), the Court of Appeals upheld former RCW 4.92.110 and stated that the statute required "nothing more than the filing of a claim against the State sometime before the running of the statute of limitations." *Peterick*, at 178. The *Peterick* court went on to note that the mere fact that there was a procedural barrier for governmental claimants that was not present for private claimants was insufficient to invalidate the statute, because there were no "statutory classifications [like that] condemned in *Hunter* as lacking any 'substantial or even rational' basis". *Peterick*, at 178.

Similarly, in *Coulter v. State*, 93 Wn.2d 205, 608 P.2d 261 (1980), the Washington State Supreme Court upheld former RCW 4.92.110. The *Coulter* court first noted that the Legislature determines under what circumstances suit may be brought against the State under article 2, section 26 of the Washington Constitution and that the courts are required to honor that mandate.

According to the *Coulter* court, the exception taken in *Hunter* did not depart from that principle because the statute at issue there violated equal protection in a manner not applicable to former RCW 4.92.110. Thus, the *Coulter* court upheld the dismissal of the plaintiff's action for failure to file a claim pursuant to former RCW 4.92.110. *Coulter*, at 206.

In *Hall v. Niemer*, 97 Wn.2d 574, 649 P.2d 98 (1982), the Supreme Court analyzed its previous decision in *Coulter*, noting that it had held that "reasonable procedural burdens" could be placed on state tort victims "as long as such burdens are not substantial and do not constitute a real impediment to relief for governmental tort victims." *Hall*, at 581. The *Hall* court also noted that the burden placed on governmental tort victims by former RCW 4.92.110 was that:

[t]he tort claimant need only file a claim prior to bringing suit within the time period of the relevant statute of limitations[, and t]he claim filing condition precedent serves the reasonable purpose of fostering negotiation and settlement without substantially burdening tort claimants.

*Hall*, at 581.

More recently, in *Mercer v. State*, 48 Wn. App. 496, 739 P.2d 703, *review denied*, 108 Wn.2d 1037 (1987), a mother brought an action against the State for the wrongful death of her convict son while he was incarcerated in the penitentiary. The young man was killed by another inmate on September 9, 1975. His mother filed suit on March 26, 1976, but took a voluntary nonsuit on December 7, 1976. *Mercer*, at 497.

Mercer refiled her complaint on May 15, 1978. In its answer, the State notified Mercer that she had failed to comply with the requirements of former RCW 4.92.110. Despite this warning from the State, Mercer failed to comply with the statute by September 9, 1978, the date of expiration of the statute of limitations.

On March 7, 1983, the trial court granted Mercer's motion to strike the State's affirmative defense of failure to comply with former RCW 4.92.110. However, the defense was reinstated, and on March 18, 1985, Mercer's case was dismissed with prejudice for failure to comply with the statute, and she appealed. *Mercer*, at 497.

In its analysis, the *Mercer* court noted that the procedures of former RCW 4.92.110 are mandatory, and that compliance is a condition precedent to recovery. Relying on *Coulter*, the *Mercer* court rejected a contention that the statute was unconstitutional. *Mercer*, at 498-500.

Mercer next argued that the State was equitably estopped from raising her failure to comply with the statute as an affirmative defense because it did not timely assert the statute at the beginning stages of the lawsuit. The *Mercer* court set forth the elements that a party must show to prove equitable estoppel:

(1) an admission, statement, or act, inconsistent with the claim afterward asserted; (2) action by the other party on the

faith of such admission, statement, or act; and (3) injury to such other party arising from permitting the first party to contradict or repudiate such admission, statement, or act.

*Mercer*, at 500.

The *Mercer* court noted that the doctrine of equitable estoppel, although not favored, is applicable against the State acting in its governmental, as well as proprietary, capacity. *Mercer*, at 500. However, the *Mercer* court held that equitable estoppel was not available in the case before it because the State had not taken any affirmative action leading Mercer to believe that she did not need to comply with former RCW 4.92.110. Quite to the contrary, the State notified Mercer through its answer that she was not in compliance with the statute's requirements. The State's "inaction" in failing to assert the statute at the beginning stages of the litigation was insufficient to invoke equitable estoppel. *Mercer*, at 501.

■ Applying the law to the facts before us, we hold that Jones failed to comply with former RCW 4.92.110 because he failed to file his claim with the office of risk management *before* filing his lawsuit. Jones' argument that the statute merely requires that the claim be filed at some time prior to the running of the statute of limitations is erroneous.

The Washington Supreme Court's analysis in *Coulter* and a plain reading of the statute show that the claimant is required to file his or her claim with the office of risk management *before* filing a lawsuit. We note that the Legislature has amended former RCW 4.92.110 to provide that the claimant must file the claim *60 days* before commencing the lawsuit.

Jones attempts to circumvent the plain meaning of RCW 4.92.110 by citing language in *Peterick*, *Hall*, and *Gates v. Rosen*, 29 Wn. App. 936, 631 P.2d 993 (1981).[2] Taken out of context, this language might suggest a judicial interpretation of the statute that permits an individual to file a claim at any time prior to the running

[2]*Aff'd sub nom. Hall v. Niemer*, 97 Wn.2d 574, 649 P.2d 98 (1982).

of the statute of limitations, regardless of whether or not a lawsuit has been filed.

However, an examination of the language in the above-mentioned cases indicates that Jones is mistaken in his interpretation. In *Peterick*, plaintiff Wilson argued that her lawsuit was improperly dismissed on the basis of her failure to file a claim prior to filing suit. She contended that the holding in *Hunter* was dispositive, and also asserted, but did not support with argument, a claim of estoppel. The *Peterick* court did not consider the estoppel claim.

In distinguishing the case before it from the facts in *Hunter*, the *Peterick* court noted that the unconstitutional statute in *Hunter* gave individuals harmed by government misfeasance only a very short time following the commission of a tort in which to file a claim. In contrast, former RCW 4.92.110 placed no time limits on the filing of a claim, except that of the applicable statute of limitations. Hence, the opinion contained the language cited by Jones that "RCW 4.92.110 requires nothing more than the filing of a claim against the State sometime before the running of the statute of limitations." *Peterick v. State, supra* at 178.

Jones is correct that in *Gates v. Rosen, supra*, the Court of Appeals stated that former RCW 4.92.110 was upheld because it only required that a claim be filed "sometime before the running of the statute of limitations." *Gates*, at 939. However, prior to that statement, the *Gates* court stated as follows:

> After these cases[3] were decided, the legislature apparently deemed it necessary to require presenting and filing a claim with a state agency as a *condition precedent* to maintaining an action for tort against the State . . ..

(Italics ours.) *Gates*, at 939.

---

[3]*Hunter v. North Mason High Sch. & Sch. Dist. 403*, 85 Wn.2d 810, 539 P.2d 845 (1975); *Jenkins v. State*, 85 Wn.2d 883, 540 P.2d 1363 (1975); *Haslund v. Seattle*, 86 Wn.2d 607, 547 P.2d 1221 (1976).

Similarly, in *Hall v. Niemer, supra* at 581, the Washington State Supreme Court, in analyzing *Coulter v. State, supra,* stated:

> The tort claimant need only file a claim prior to bringing suit within the time period of the relevant statute of limitations. *The claim filing condition precedent* serves the reasonable purpose of fostering negotiation and settlement without substantially burdening tort claimants.

(Italics ours.)

It is clear when the surrounding language in these cases is examined that the courts have not altered the plain meaning of the language in former RCW 4.92.110. Therefore, Jones' argument that he fulfilled the requirements of the statute by filing his claim with the State after filing his lawsuit cannot be sustained.

■ Jones also argues that the State should be estopped from raising the defense of noncompliance with the statute because it deliberately misled him with its answers to his interrogatories. We do not agree. Jones knew of the requirements of former RCW 4.92.110 because he filed a claim pursuant to the statute 19 days after commencing his lawsuit. Had the State properly responded to his interrogatory by citing noncompliance with RCW 4.92-.110, Jones would not have been alerted to the statute because he already knew of its existence. In addition, an examination of the State's answer shows that it mentioned noncompliance with RCW 4.92. Thus, as in *Mercer,* Jones' estoppel claim cannot be upheld.

While we have determined that we will not apply the doctrine of equitable estoppel in this case, we are not unmindful of the effect of the State's ambiguous response to Jones' interrogatories. We would like to emphasize to the State that this court does not approve of "trial by ambush" tactics. It would have been much better for the State to have responded directly and fully to Jones' interrogatory.

CLAIMS AGAINST UNIVERSITY OFFICIALS

Jones argues that RCW 4.92.110 does not apply to suits against individual state employees. The State argues that suits against individual state employees in their official capacities are suits against the State and subject to the claim filing requirements of RCW 4.92.110.

The State cites two cases in support of its contention that dismissal of the individual defendants was proper. In *Hontz v. State*, 105 Wn.2d 302, 714 P.2d 1176 (1986), the Washington State Supreme Court addressed the question of whether certain 42 U.S.C. § 1983 claims against Harborview Medical Center were valid, given that a plaintiff may not sue the State under section 1983 for acts of its agents. *Hontz*, at 309.

The *Hontz* court noted that suits against state agencies are suits against the State and held that since Harborview is managed by an arm of the State, *i.e.*, the University of Washington, and its employees are state employees, the section 1983 claim against Harborview was properly dismissed. *Hontz*, at 310. In *Hontz*, the section 1983 claims against individual Harborview employees were not before the court. Therefore, the circumstances in *Hontz* are not analogous to the facts before us.

In *Goodisman v. Lytle*, 724 F.2d 818 (9th Cir. 1984), a University of Washington assistant professor was denied tenure and brought a civil rights action against the University, the board of regents, the tenure committee and its chair, and the University president. The defendants argued that they had sovereign immunity against federal civil rights suits seeking damages or injunctive relief, based on the Eleventh Amendment. *Goodisman*, at 819-20. The *Goodisman* court held that although Goodisman was barred from seeking money damages from the state treasury by suing the individuals in their official capacities, the Eleventh Amendment did not bar his claims against the University officials in their individual

capacities. *Goodisman*, at 820. *See also Barnes v. Byrd*, 511 F. Supp. 693 (E.D. Wash. 1981), *aff'd*, 692 F.2d 762 (9th Cir. 1982).

■ Although *Goodisman* concerned the applicability of 42 U.S.C. § 1983, rather than interpretation of state law, the analysis is applicable to the facts before us. We hold that RCW 4.92.110 applies to actions commenced against state employees in their official capacities, but not to suits against those persons in their individual capacities. Thus, the trial court should have permitted Jones to proceed with his state claims against the University officials in their individual capacities, as well as with his section 1983 claims.

The summary judgment of the trial court is affirmed with respect to the defendant State of Washington, but reversed as to the individual defendants.

GROSSE, C.J., and WEBSTER, J., concur.

Reconsideration denied October 16, 1991.

Review denied at 118 Wn.2d 1026 (1992).