[Nos. 35983-5-I; 34985-6-I.   Division One.   April 8, 1996.]

MICHELE HARDESTY, *Appellant*, v. MORTON STENCHEVER, M.D., ET AL., *Respondents*.

MICHELE HARDESTY, *Respondent*, v. MORTON STENCHEVER, M.D., ET AL., *Appellants*.

*Ron Perey, Stacey L. Kekich,* and *Law Office of Ron Perey,* for Hardesty.

*William J. Leedom, Carol S. Hunting, Mary H. Spillane,* and *Williams, Kastner & Gibbs*; and *Christine O. Gregoire, Attorney General,* and *Michael Madden, Assistant,* for Stenchever, et al.

AGID, J. — In *Hardesty I*, Dr. Morton Stenchever appeals the trial court's order denying his motion for summary judgment in a medical malpractice action Michele Hardesty filed against him, the University of Washington Medical Center (UW), and the State of Washington. Hardesty cross–appeals the trial court's dismissal of the UW and the State. In *Hardesty II*, she appeals the trial court's order vacating a default judgment in her favor. We conclude the trial court properly dismissed the UW and the State in *Hardesty I*, but that it should have dismissed Stenchever as well. Accordingly, we affirm in part and reverse in part in that case. We conclude the trial court

properly vacated its default order in *Hardesty II*. We affirm that order and remand for further proceedings.

## FACTS

Hardesty filed a complaint against Stenchever, the UW and the State for medical negligence alleging that Stenchever, an employee of the UW, negligently performed a total abdominal hysterectomy on November 5, 1990. Hardesty suffered from severe pelvic pain before the surgery which, she asserted, worsened after the hysterectomy. Hardesty remained in Stenchever's care until January 1992, during which time, she alleges, he failed to diagnose and evaluate her continuing pelvic pain. Hardesty filed her first complaint on November 4, 1993. As an affirmative defense, the defendants raised Hardesty's failure to file a claim with the Office of Risk Management in Olympia as required by RCW 4.92.100.

Under RCW 4.92.100, a plaintiff in a tort suit against the State must present and file her claim with the risk management office. Under RCW 4.92.110, the plaintiff must wait 60 days after filing a claim with the risk management office before initiating a lawsuit. RCW 4.16.350 sets a three year statute of limitations for medical negligence actions. Hardesty's attorneys, believing the statute of limitations in *Hardesty I* had lapsed on November 5, 1993, thought they were precluded from simply dismissing the action and refiling 60 days later. Instead, they proceeded with discovery in an attempt to defend against the defendants' affirmative defense.

The defendants moved for summary judgment based on Hardesty's failure to comply with RCW 4.92.100. The trial court granted the motion in part, dismissing the claims against the UW and the State but allowing the case against Stenchever to go forward. Stenchever petitioned this court for discretionary review of the summary judgment order, which we granted. Hardesty cross–appealed the trial court's order dismissing the UW and the State.

While the appeal in *Hardesty I* was pending, Hardesty filed a second complaint on December 9, 1994, raising the same claims against the same defendants. She filed her second complaint in reliance on *Caughell v. Group Health Coop. of Puget Sound*, 124 Wn.2d 217, 876 P.2d 898 (1994), in which the Supreme Court clarified the statute of limitations for medical negligence actions where the plaintiff alleges continuing negligent treatment. Under *Caughell*, the three year statute of limitations under RCW 4.16.350 does not accrue and begin to run until the last date of negligent medical treatment. Hardesty asserted she had three years from the date of her last consultation with Stenchever in January 1992 to file her complaint because, under *Caughell*, the statute of limitations would not have run until January 1995.

In *Hardesty I*, Assistant Attorney General Steve Milam appointed William Leedom of Williams, Kastner & Gibbs to represent the defendants. The same day he filed *Hardesty II*, Hardesty's attorney, Ron Perey, sent a copy of the complaint to Leedom accompanied by a letter asking him if he would accept service on behalf of his clients. He also informed Leedom that he had sent the papers out for formal service of process. Leedom did not, however, receive a copy of the summons. Stenchever, his wife and the attorney general's office at the UW were personally served with copies of the summons and complaint.

On December 12, 1994, Milam filed a notice of appearance on behalf of all the defendants in *Hardesty II*. Neither he nor Leedom, however, responded to Perey or filed an answer in *Hardesty II*. On January 4, 1995, Hardesty filed a motion for default. She served the motion on the attorney general, but not Leedom. King County Superior Court Judge Liem Tuai, who also presided over *Hardesty I*, granted Hardesty's default motion on January 12, 1995. None of the defendants was present or represented at the hearing. The following day, the defendants discovered by serendipity that the default had been entered. They moved to vacate the order and for an order shortening time for

the hearing on the motion to vacate. The court granted the motion to shorten time and heard the motion to vacate on January 19. In the interim, Hardesty's attorney had prepared findings of fact and conclusions of law and a default judgment. On January 18, without notice to the defendants or their attorney, he appeared ex parte and presented the documents to a commissioner. The commissioner signed the documents and entered a default judgment against the defendants for $300,317.75. The defendants learned of the default judgment at the hearing on their motion to vacate the default order. They moved to vacate the January 18 default judgment as well as the January 12 order of default. The trial court granted the defendants' motion.

## DISCUSSION

### HARDESTY I

We will address Hardesty's cross appeal in *Hardesty I* first because it presents the threshold issue of the effect of her failure to file a claim with the risk management office in Olympia. RCW 4.92.110 provides:

> No action shall be commenced against the state for damages arising out of tortious conduct until sixty days have elapsed after the claim is presented to and filed with the risk management office. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty–day period.

RCW 4.92.210(1) requires the plaintiff to file her claim with the risk management office, department of general administration, which is in Olympia, unless specifically delegated to other state agencies under state statute. Although there is a risk management office at the UW, it is not authorized to accept claims filed under RCW 4.92.110.

Hardesty contends the defendants should be equitably estopped from asserting her failure to comply with RCW 4.92 as an affirmative defense because no one at the Office

of Risk Management at the UW informed her that she was also required to file a claim in Olympia. She further contends that the statute violates equal protection because there is no rational basis to require plaintiffs to file claims in Olympia as well as with the Office of Risk Management at the UW. Alternatively, she argues that claims against the UW are not incorporated within the statutory scheme requiring filing in Olympia.

▮▮ We reject these arguments because Washington courts have consistently held that strict compliance with the requirements of notice of claim statutes is a condition precedent to recovery. See *O'Donoghue v. State*, 66 Wn.2d 787, 789–90, 405 P.2d 258 (1965); *Kleyer v. Harborview Med. Ctr. of the UW*, 76 Wn. App. 542, 887 P.2d 468 (1995); *Andrews v. State*, 65 Wn. App. 734, 829 P.2d 250 (1992); *Jones v. UW*, 62 Wn. App. 653, 814 P.2d 1236 (1991), *review denied*, 118 Wn.2d 1026 (1992); *Mercer v. State*, 48 Wn. App. 496, 498, 739 P.2d 703, *review denied*, 108 Wn.2d 1037 (1987). The proper remedy for a plaintiff's failure to comply with the statute is dismissal of the suit. *Kleyer*, 76 Wn. App. at 546. We recently addressed whether the statute requires a plaintiff to file a claim at the precise location specified in the statute, i.e., the Department of General Administration in Olympia, as opposed to the UW's Office of Risk Management and concluded the failure to file with the Office of Risk Management in Olympia is grounds for dismissal. *Kleyer*, 76 Wn. App. at 548. The trial court properly dismissed the UW and the State in *Hardesty I*.

Hardesty contends it is "manifestly unfair" to affirm the order dismissing her claim against the UW and the State because in *Caughell v. Group Health Coop. of Puget Sound, supra*, the Supreme Court for the first time established that she had at least until January 1995 to file her cause of action. See 124 Wn.2d at 232. This argument is irrelevant to the issues in *Hardesty I*. *Caughell* may have extended the statute of limitations for Hardesty's cause of action to January 1995. But that holding does not

affect the analysis of whether the trial court properly dismissed the UW and the State for Hardesty's failure to comply with RCW 4.92.110 and .210 because the trial court did not base its decision on the statute of limitations. Thus, although *Caughell* may be relevant in *Hardesty II*, it is not applicable in *Hardesty I*. Because the trial court did not make any rulings on the statute of limitations, we decline to decide what, if any, effect *Caughell* has on her cause of action. This is an issue properly addressed to the trial court in the first instance on remand.

Stenchever appeals the trial court's order denying his motion for summary judgment, contending it erred in failing to dismiss him on the same grounds as the other defendants. In its oral ruling, the trial court indicated it was allowing the case against Stenchever to proceed because he was acting in his individual capacity when he made decisions about Hardesty's medical care. We conclude that Stenchever's actions were performed within the scope of his official duties at the UW and reverse this portion of the trial court's order.

Under Chapter 4.92 RCW, the State is required to defend a state employee sued for damages for acts arising from the performance of his or her official duties and to satisfy any judgment resulting from such an action. Under RCW 4.92.060, a state employee sued for damages arising from acts or omissions while performing, or in good faith purporting to perform, official duties may ask the attorney general to authorize the defense of the action at State expense. Under RCW 4.92.070, if the attorney general finds that the employee's acts or omissions were, or were purported to be, in good faith and performed within the scope of that person's official duties, she must grant the request. Under RCW 4.92.075, when the attorney general has represented a state employee and a court has entered a judgment against him or her, the judgment creditor must seek satisfaction only from the State, and the judgment cannot become a lien on the employee's property. Thus, if Stenchever performed the acts or omissions upon

which Hardesty bases her claim within the scope of his official duties as a state employee, he should have been dismissed on the same grounds as the institutional defendants.

■ Hardesty acknowledges that Stenchever's diagnoses and treatment were performed entirely within the scope of his employment at the UW. She argues, however, that actions taken within a person's "scope of employment" are not tantamount to actions taken within the scope of that person's "official duties," the language used in RCW 4.92.060. She contends that the claim filing provisions apply only to suits against the State and those employees performing some type of governmental function, like a safety inspector, building inspector, or corrections officer. Because Stenchever was not "performing some function of government," she argues, he was not performing "official duties" and is not covered by the provisions of Chapter 4.92 RCW.

We reject this argument because it is based on a tortured reading of the statute. Clearly, Stenchever performed the actions upon which Hardesty bases her claim entirely within the scope of his employment at the UW. As a physician at the UW, treating patients is his "official" duty. He has no others. Under RCW 4.92, the attorney general is required to defend him and satisfy any judgment against him. The suit, therefore, exposes state funds to liability, making this precisely the type of case to which RCW 4.92 applies. If, as Hardesty argues, Stenchever is liable only in his individual capacity and not as an employee of the UW and the State, she would have no basis upon which to assert a claim against the institutional defendants.

Hardesty's reliance on *Jones v. UW*, *supra*, is misplaced. Jones sued the UW, the Board of Regents, the President and Provost of the UW, the Dean of Arts and Sciences and the Chairman of the Department of Ethnic Studies at the UW alleging age and race discrimination when he was terminated from his position as a lecturer in the Depart-

ment of Ethnic Studies. On the State's motion, the trial court granted summary judgment because Jones' failure to comply with the claim filing provisions of RCW 4.92.110. This court held that dismissing the claims against the institutional defendants and state employees in their official capacities was proper. It held, however, that RCW 4.92.110 did not apply to the claims against the university officials "in their individual capacities." 62 Wn. App. at 664. Jones sued for age and race discrimination under state tort law and under 42 U.S.C. § 1983, personal acts which, if committed, would be outside the scope of the employees' employment. As such, the State would not be obligated to defend them under RCW 4.92. In contrast, Hardesty alleged negligent acts by Stenchever performed entirely within the scope of his employment which the State is required to defend. The principle enunciated in *Jones* does not apply to these facts.

## HARDESTY II

■ ■ Hardesty contends the trial court erred in vacating the default judgment in *Hardesty II*. An order vacating a default judgment is within the trial court's discretion and will not be disturbed on review absent an abuse of that discretion. *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991). A trial court abuses its discretion when it exercises "its discretion on untenable grounds or for untenable reasons, or [its] discretionary act was manifestly unreasonable." 58 Wn. App. at 595. Default judgments are disfavored. A trial court must exercise its authority "liberally, as well as equitably, to the end that substantial rights [are] preserved and justice between the parties [is] fairly and judiciously done." *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968). "[W]here the determination of the trial court results in the denial of a trial on the merits an abuse of discretion may be more readily found than in those instances where the default judgment is set aside and a trial on the merits ensues." 73 Wn.2d at 351–52.

■ CR 55(c)(1) provides that once a default judgment has been entered, a court "may likewise set it aside in accordance with [CR] 60(b)." Under CR 60(b)(1) the grounds for vacating a default judgment include "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order[.]" In exercising its discretion to vacate a judgment pursuant to CR 60(b), a trial court must consider whether: (1) there is substantial evidence to support, at least prima facie, a defense to the opposing party's claim; (2) the moving party's failure to timely appear in the action, and answer the opponent's claim was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) the moving party acted with due diligence after notice of entry of the default judgment; and (4) vacating the default judgment would result in a substantial hardship to the opposing party. *White*, 73 Wn.2d at 352. Both sides agree that the only factors at issue here are the first two.

■ Hardesty contends the trial court erred in vacating the default judgment because the defendants failed to produce prima facie evidence of a defense at the hearing on the motion to vacate in *Hardesty II*. This argument is without merit. Although Judge Tuai did not discuss this factor at great length in ruling on the motion to vacate, it is clear that he was relying on his personal knowledge of other pleadings in this case and in *Hardesty I*, over which he also presided. We see no practical reason why a trial court intimately familiar with the record in what is essentially the same cause of action should require the parties to waste time and resources presenting it with information it already has. Judge Tuai did not abuse his discretion in relying on his knowledge of the materials filed in *Hardesty I* in concluding that the defendants had produced prima facie evidence of a defense.

Hardesty asserts that the records in *Hardesty I* and *Hardesty II* are devoid of any declarations or explanation stating a defense to the allegations of her complaint. Her argument is without merit. In the defendants' answer in

*Hardesty I*, they asserted the defenses of contributory negligence, assumption of the risk and failure to properly file the claim with the risk management office in Olympia. Although they did not support their motion to vacate with a statement of the facts constituting their defense as required by CR 60(e)(1), the trial court did not abuse its discretion in relying on other documents in the record containing this information.

This case is similar to *C. Rhyne & Assocs. v. Swanson*, 41 Wn. App. 323, 704 P.2d 164 (1985), where we reversed the trial court's failure to grant the defendant's motion to vacate a default judgment although the defendant violated CR 60(e)(1) by failing to support his motion to vacate with a statement of the facts constituting his defense. There, we held that defenses asserted in the defendant's answer, which was filed after the default judgment, were sufficient to establish a prima facie defense. 41 Wn. App. at 327. We observed that "where the defendant moves promptly to vacate and has a strong case for excusable neglect, the strength of the defense is less important to the reviewing court." 41 Wn. App. at 328. The real issue here is whether the defendants' failure to respond to the complaint in *Hardesty II* was the result of mistake, inadvertence, surprise or excusable neglect. In this context, the strength of their defense is of less importance in evaluating whether the trial court abused its discretion in vacating the default judgment.

Hardesty claims the defendants' failure to answer the complaint in *Hardesty II* was the result of inexcusable neglect. This requires us to decide whether Steve Milam's failure to pass the complaint on to his outside counsel or his assumption that Hardesty had served Leedom constitutes inexcusable neglect. Under the facts of this case, the defendants' failure to respond to the complaint in *Hardesty II* is excusable because Milam's belief that Hardesty had also served Leedom was not unreasonable. Leedom filed a notice of appearance and represented the defendants in *Hardesty I*, which involved the same parties and

issues. Apparently, the only reason Hardesty did not formally serve him with a copy of the complaint in *Hardesty II* or notify him that she was filing a motion for default judgment was because he did not file a notice of appearance in the second action. Hardesty contends she was required to serve only Steve Milam because he entered an appearance on behalf of the defendants in *Hardesty II* and, therefore, was the only attorney of record. Although perhaps technically correct, we reject this argument in light of Hardesty's knowledge that the defendants were Leedom's clients in *Hardesty I* and Leedom's reasonable belief based on the history of *Hardesty I* that he did not need to file another notice of appearance in *Hardesty II* to receive service.

In ruling on a motion to vacate a default judgment the court is exercising its equitable powers. *State v. A.N.W. Seed Corp.*, 44 Wn. App. 604, 607, 722 P.2d 815 (1986). " 'What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.' " 44 Wn. App. at 607 (*quoting Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979) (italics omitted)). Although Leedom and Milam may have been inattentive in failing to answer the complaint in *Hardesty II*, notwithstanding Hardesty's failure to serve Leedom with a summons, under the facts of this case, it would have been inequitable to allow Hardesty to prevail on the motion for default where her attorneys could have easily informed the attorneys whom they knew to be representing the defendants of the motion for a default judgment.

Hardesty's reliance on *Conner v. Universal Utilities*, 105 Wn.2d 168, 712 P.2d 849 (1986), is misplaced. Hardesty is correct that in *Conner* the Supreme Court upheld the validity of a default judgment where a corporation's in-house counsel was served with a complaint but failed to pass the pleadings to the corporation's insurance company because the pleadings were misplaced. But the court did not address the issue of excusable neglect because it

granted review only on the issue of whether due process requires notice to a defaulting defendant of a damages hearing before entry of a default judgment. 105 Wn.2d at 171. *Conner* is inapplicable here.

In a statement of additional authorities, Hardesty also relies on *Prest v. American Bankers Life Assurance Co.*, 79 Wn. App. 93, 900 P.2d 595 (1995). There, an insurance company denied an insured's claim. She sued, the insurer failed to respond and the trial court entered a default judgment. The insurer moved to vacate the judgment, explaining it failed to answer the complaint because the copy of the legal process sent by the insurance commissioner to the insured had been misplaced when the person designated to receive process was reassigned to other duties. 900 P.2d at 598–99. This court held that the insurer's neglect was inexcusable. Observing that "[i]t is an important part of the business of an insurance company to respond to legal process," we concluded that the insurer had a responsibility to notify the insurance commissioner if the person designated to receive process had changed or to make arrangements for someone else to assume that person's duty. 900 P.2d at 599.

*Prest* is distinguishable. There, the plaintiff filed her complaint on the insurance commissioner who, in turn, forwarded it to the person designated to accept service of process for the insurer. Here, although Hardesty knew Leedom was representing the defendants because she sent him a copy of the complaint in *Hardesty II* accompanied by a letter referring to the defendants as his clients, she did not serve him with a copy of the default motion. Unlike *Prest*, Hardesty knew that the attorney general who filed a notice of appearance would not be handling the case personally. It is not the case that she, in good faith, served the person or entity who would be ultimately responsible for the case. Furthermore, the *Prest* court's discussion of excusable neglect is dicta because it relied on the defendant's failure to produce prima facie evidence of a defense in disposing of the case. 900 P.2d at 597–98.

The defendants argue that they were not required to file a new notice of appearance under CR 55(a)(3) to receive notice of Hardesty's motion for default and that they were entitled to notice of the entry of the default judgment and the findings of fact accompanying the order. Because we affirm the trial court's vacation of the default order, we decline to resolve these issues.

The trial court's order granting summary judgment to the UW and the State in *Hardesty I* is affirmed, its order denying Stenchever's motion for summary judgment is reversed and that case is dismissed. The trial court's order vacating the default judgment in *Hardesty II* is affirmed, and that case is remanded for further proceedings.

WEBSTER and COX, JJ., concur.

Review denied at 130 Wn.2d 1005 (1996).