[No. 21864-0-II.   Division Two.   June 26, 1998.]

CYNTHIA L. LEVY, *Appellant*, v. THE STATE OF WASHINGTON, ET AL., *Respondents*.

(1992) (issues not adequately briefed or supported by citation to authority need not be addressed by appellate court).

*Joseph J. Ganz* of *Law Office of Joseph Ganz & Associates*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Robert C. Hargreaves, Assistant*, for respondents.

BRIDGEWATER, J. — Cynthia Levy was sexually molested while a patient at Western State Hospital. The claim for damages, signed by her attorney and filed with the State Office of Risk Management, was not verified. A complaint was subsequently filed but the case was dismissed for want of prosecution three years after Levy's attorney withdrew. A new attorney moved to vacate the order of dismissal, but the motion was denied. We hold that, because the claim was not verified as required by statute, the superior court lacked jurisdiction and dismissal was proper. We affirm.

It is alleged that, while a patient at Western State Hospital, Levy was sexually molested by a dentist, Dr. Jerry Woods, at the hospital on November 4, 7, and 10, 1988. Levy's first attorney filed a claim for damages with the State Office of Risk Management in April 1991. Levy never verified the claim. Instead, her attorney simply signed the claim "on behalf of Claimant Cynthia L. Levy." The claim was neither sworn under penalty of perjury, nor signed or acknowledged before a notary public. The State sent Levy's attorney a notice approximately one week later indicating

its receipt of the claim. Levy's attorney filed a complaint against the State in Thurston County Superior Court on November 4, 1991. Little discovery was conducted and the State never answered. Levy's first attorney filed a notice of intent to withdraw in February 1993, which became effective in March 1993.

In June 1996, the Thurston County Clerk's Office filed a notice of dismissal for want of prosecution. Levy did not receive actual notice because she no longer lived at the address on record; the letter of notice was returned to the Clerk's Office as undeliverable. The case was dismissed for want of prosecution in July 1996. On November 1, Levy's new attorney filed a motion to vacate the order of dismissal. Levy's new attorney argued that, during the period of time that she represented herself pro se, Levy was only "borderline competent" to handle her affairs. Dr. Stuart Greenberg, a psychologist retained to assess Levy's mental abilities, testified as to Levy's mental condition since July 1996. The trial court denied the motion to vacate, reasoning that Levy's failure "to verify her claim is fatal and that the court is without jurisdiction to hear this case. Supporting that conclusion is my finding that the affidavit of Dr. Greenberg is not sufficient to establish that plaintiff was incapacitated from verifying, presenting and filing the claim in 1991." With declarations by Levy's first attorney and his paralegal submitted to support a finding that Levy was incapacitated and unable to verify the claim in 1991, Levy moved for reconsideration. The trial court denied the motion, stating in its oral opinion that the record "does not establish any reason by which I can find that she was incapacitated under the meaning of that statute. Therefore the signature of her lawyer, whether it be considered only as a signature or signature and verification, makes no difference in my analysis. The signature of her lawyer was not adequate." Levy appeals.

I

Levy argues both that the State waived its objection

to the sufficiency of the claim by failing to assert it and that the State "is estopped to raise the verification issue at this point." Citing *Miotke v. City of Spokane*, 101 Wn.2d 307, 678 P.2d 803 (1984), Levy notes that "the State can waive its claim filing requirement by failing to assert the defense." In *Miotke*, the Supreme Court held that the state waived its objection to the owner's failure to file a claim pursuant to RCW 4.92.110 because substantial litigation had occurred before the defense was raised. 101 Wn.2d 337. The defense was not raised until three years after litigation began and after the first phase of litigation was completed. *Id.* Several days of hearings had been conducted, and the trial court had already entered its first set of findings and conclusions. *Id.* "In view of the substantial litigation which had occurred before the defense was raised, we agree with the trial court that defendants had waived any objections to plaintiffs' failure to file under RCW 4.92.110." *Id.*

The plaintiff in *Mercer v. State*, 48 Wn. App. 496, 501, 739 P.2d 703, *review denied*, 108 Wn.2d 1037 (1987), also cited *Miotke* for the argument that the state waived its right to object to Mercer's failure to file a claim under RCW 4.92.110. Mercer filed her complaint two years and eight months after her cause of action arose, and the state asserted in its answer that she had not complied with RCW 4.92.110. *Mercer*, 48 Wn. App. at 501-02. The court concluded that the "unique facts establishing a waiver in *Miotke* are not present here." *Id.* at 501. Similarly, Levy filed her complaint the week that the statute of limitations expired. Little discovery was conducted in the case and the State never filed an answer. Even if the State had answered and had asserted the defense in its answer, the statute of limitations would have already run and Levy would not have had an opportunity to refile her claim. Like *Mercer*, the unique facts establishing waiver in *Miotke* are not present here.

■ The plaintiff in *Kleyer v. Harborview Med. Ctr.*, 76

Wn. App. 542, 549, 887 P.2d 468 (1995), argued that "he was misled into believing that he had complied with the claim filing procedures by the fact that the University risk management office attempted to settle the claim. Thus, Kleyer suggests that the University either waived the filing requirement, or should be estopped from raising the failure to file a claim as an affirmative defense." (Footnote omitted.)

> Under RCW 4.92.110, filing a claim with the office of risk management in Olympia is a prerequisite to the commencement of an action, not the initiation of settlement negotiations. Therefore, the University's attempt to settle Kleyer's claim had no impact on Kleyer's statutory obligation to file a claim with the office of risk management in Olympia before filing a suit against the University.

*Kleyer*, 76 Wn. App. at 549 n.6. *See also Andrews v. State*, 65 Wn. App. 734, 738, 829 P.2d 250 (1992); *Jones v. University of Wash.*, 62 Wn. App. 653, 814 P.2d 1236 (1991), *review denied*, 118 Wn.2d 1026 (1992). Here, Levy waited until the week the limitations period expired to file her complaint, conducted little discovery, and never requested an answer from the State. The State did not waive its objection to Levy's claim for damages merely by indicating its receipt of the claim.

In order to establish equitable estoppel, a party must show: (1) an admission, statement, or act, inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party arising from permitting the first party to contradict or repudiate such admission, statement, or act. *Mercer*, 48 Wn. App. at 500 (citing *Shafer v. State*, 83 Wn.2d 618, 623, 521 P.2d 736 (1974)). "Equitable estoppel, however, is not favored and requires every element be proved with clear, cogent and convincing evidence." *Mercer*, 48 Wn. App. at 500 (citing *Pioneer Nat'l Title Ins. Co. v. State*, 39 Wn. App. 758, 760-61, 695 P.2d 996 (1985)). Here, there was no admission, statement, or act made by the State that was inconsistent with the State's

subsequently asserted position that the claim was insufficient because not verified. The State notified Levy in a letter dated April 26, 1991, "We are in receipt of a copy of your client's claim against the State of Washington in the amount of $1,000,000.00, which was filed with the Office of Risk Management on April 15, 1991." Nor was there any admission, statement, or act on the part of the State that Levy relied on in failing to file a proper claim. Levy filed her complaint in Thurston County Superior Court the same week that the statute of limitations ran. Even if the State had answered and asserted as an affirmative defense that Levy's claim was unverified, the statute of limitations would have already run.

The plaintiff in *Mercer* relied exclusively on the State's inaction to support her estoppel argument. The court held:

> In *Pioneer Nat'l Title v. State, supra,* however, the court held that where "no State advice or communication . . . is alleged . . . State inaction, alone, even if a breach of duty, does not constitute an inconsistent admission, statement or act." *Pioneer,* at 761. Accordingly, because Mercer has failed to present any evidence establishing an admission, statement or act, inconsistent with the claim, she has failed to satisfy the requirements of equitable estoppel.

*Mercer,* 48 Wn. App. at 501. Levy similarly claims that the State is estopped to raise the verification issue because of its inaction as it failed to notify Levy earlier that the claim was not properly verified. There is no evidence establishing an admission, statement, or act by the State that is inconsistent with the defense asserted. Thus, Levy fails to satisfy the requirements of equitable estoppel.

█ The plaintiff in *Hardesty v. Stenchever,* 82 Wn. App. 253, 258-59, 917 P.2d 577, *review denied,* 130 Wn.2d 1005 (1996), filed her claim for damages at the Office of Risk Management at the University of Washington (UW), rather than at the Office of Risk Management at the Department of General Administration in Olympia. Hardesty claimed that the state "should be equitably estopped from asserting

her failure to comply with RCW 4.92 as an affirmative defense because no one at the Office of Risk Management at the UW informed her that she was also required to file a claim in Olympia." *Id*. at 258-59. The court held: "We reject these arguments because Washington courts have consistently held that strict compliance with the requirements of notice of claim statutes is a condition precedent to recovery. The proper remedy for a plaintiff's failure to comply with the statute is dismissal of the suit." *Id*. at 259 (citations omitted). Like *Hardesty*, Levy claims that the State should be equitably estopped from asserting this affirmative defense because the Office of Risk Management failed to inform her that the claim was not properly verified. This does not establish equitable estoppel. The State neither waived its objection to the sufficiency of the claim, nor was estopped from raising its objection in response to Levy's motion to vacate the order of dismissal.

II

The claim filing statute, RCW 4.92.100, states:

All claims against the state for damages arising out of tortious conduct shall be presented to and filed with the risk management office. *All such claims shall be verified* and shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six months immediately prior to the time the claim arose. *If the claimant is incapacitated from verifying, presenting, and filing the claim* or if the claimant is a minor, or is a nonresident of the state, *the claim may be verified, presented, and filed on behalf of the claimant by any relative, attorney, or agent representing the claimant.*

With respect to the content of such claims this section shall

be liberally construed so that substantial compliance will be deemed satisfactory.

(emphasis added). "No action shall be commenced against the state for damages arising out of tortious conduct until sixty days have elapsed after the claim is presented to and filed with the risk management office. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period." RCW 4.92.110.

■■ Levy suggests that she substantially complied with the filing requirements of RCW 4.92.100. "Courts have determined that, unlike the content of the filing, the requirement that a plaintiff file the claim under RCW 4.92.110 is strictly enforced. Failure to file a claim in proper fashion results in dismissal of the suit." *Kleyer*, 76 Wn. App. at 545-46. "The procedures of this statute are mandatory, and compliance is a condition precedent to recovery. The failure to comply with this statute before the expiration of the applicable statute of limitations results in a dismissal of the case." *Mercer*, 48 Wn. App. at 498 (citations omitted). A plaintiff must comply with the requirements of the statutorily created right to bring an action against the State, regardless that such requirements may seem harsh and technical. *Andrews*, 65 Wn. App. at 738. "Substantial compliance is authorized for the *content*, not for the *filing*. Indeed, contrary to [the plaintiff's] suggestion, language authorizing substantial compliance as to content without similar language as to filings strongly suggests that substantial compliance does not apply to filing." *Lewis v. Mercer Island*, 63 Wn. App. 29, 33, 817 P.2d 408 (addressing the filing requirements for initiating an action against a municipality, pursuant to RCW 4.96.010 and .020), *review denied*, 117 Wn.2d 1024 (1991). Levy failed to strictly comply with the filing requirements by failing to file a verified claim. Dismissal was proper.

Levy argues that the attorney's signature in place of Levy's verification was sufficient, regardless of the fact

that the claim did not mention Levy's alleged incapacity. The trial court's analysis turned upon whether there was evidence of "incapacity" at the time of the filing of the claim such that someone else could sign the claim on her behalf. The State urges us to equate "incapacity" with "incompetency" in this instance. RCW 11.88 governs the appointment of guardians for people who are incapacitated. In a proceeding for the appointment of a guardian, incompetency must be proved by clear, cogent, and convincing evidence. RCW 11.88.045(3). Because of our holding regarding verification of the claim, we need not address whether a claim signed by someone other than the plaintiff must allege the incapacity of the plaintiff, or whether the plaintiff must prove his or her incapacity at the time of the filing as a prerequisite to establishing jurisdiction.

■■ Even if sufficient evidence were presented to prove that Levy was incapacitated at the time the claim was filed, the claim must still "be verified, presented, and filed on behalf of the claimant by any relative, attorney, or agent representing the claimant." RCW 4.92.100. Levy's attorney merely signed the claim "on behalf of Claimant Cynthia L. Levy." He neither swore to the contents of the claim under penalty of perjury, nor signed or acknowledged the claim before a notary public. The statute does not provide an example of a proper claim or of a proper verification, but merely signing under the statement, "CLAIM SUBMITTED on behalf of Claimant Cynthia L. Levy this 11th day of April, 1991," is not sufficient to verify the claim. The purpose of the verification is set forth succinctly as follows: "The purpose of the verification requirement is to assure the truthfulness of the pleadings and to discourage claims without merit . . . ." *Griffith v. City of Bellevue*, 130 Wn.2d 189, 194, 922 P.2d 83 (1996).

It is suggested that *Griffith* stands for the proposition that, because a petition for a writ of certiorari under RCW 7.16.050 need not have a verification, so neither should a claim submitted pursuant to RCW 4.92.100. But RCW 7.16.340 directs the use of the civil rules in writ proceed-

ings. *Griffith,* 130 Wn.2d at 192. Thus, the rationale that a signed verification is not jurisdictional in writ proceedings is inapplicable to claims filings; analysis of the claims statute differs from the civil rules. In the claims statute, the sovereign has established the method by which it can be held liable. As we have noted, previous case law has held that strict compliance with the filing requirements is mandatory.

The claim was not filed with the Office of Risk Management in compliance with RCW 4.92.100. Failure to file a claim in proper fashion results in dismissal of the suit. The trial court did not err when it denied Levy's motion to vacate the order of dismissal based upon lack of jurisdiction.

Affirmed.

HOUGHTON, C.J., and ARMSTRONG, J., concur.