[No. 61467-3-I.   Division One.   January 20, 2009.]

DANIEL E. MORRIS ET AL., *Appellants*, v. SWEDISH HEALTH SERVICES ET AL., *Respondents*.

---

[20] *Cascade Brigade v. Econ. Dev. Bd.*, 61 Wn. App. 615, 619, 811 P.2d 697 (1991).

772

*William J. Rutzick, Corrie J. Yackulic, Kristin M. Houser,* and *Mark A. Burke* (of *Schroeter Goldmark & Bender*), for appellants.

*Michael D. Hoffman* and *Scott T. Schauermann* (of *Hoffman Hart & Wagner, LLP*); and *David Gross* and *Kristen Dorrity* (of *Helsell Fetterman, LLP*) (*Matthew Kalmanson*, of counsel), for respondents.

¶1 GROSSE, J. — A written request for good faith mediation of a dispute regarding medical malpractice tolls the statute of limitations for one year. A dismissal of a previous medical malpractice action in the same matter does not bar a defendant from taking advantage of the tolling of the statute of limitations. Here, the defendant made a request for mediation within the original statutory time limits and thus is entitled to the one-year tolling of the statute of limitations. We reverse the trial court's dismissal of the suit as time barred.

## FACTS

¶2 Daniel Morris sued Swedish Medical Center and HRN Services Inc. for medical malpractice alleging he sustained injuries from negligent postsurgical care. Morris developed a hematoma (bleed) at the surgical site following his spinal surgery at Swedish on June 9, 2004. Morris complained of postoperative pain beginning midday on June 10 through the following morning of June 11. During 7:30 a.m. rounds on June 11, Dr. Jacob Young examined Morris and ordered an immediate MRI (magnetic resonance imaging) exam. The MRI was not performed until 11:30 a.m. Based on the results of the MRI, Dr. Young performed a second surgery to remove the hematoma at 2:30 p.m. that afternoon.

¶3 Morris alleges he sustained injuries as a result of the nursing staff's failure to timely notify his doctor regarding his status after the initial spinal surgery. He asserts that the delay in obtaining the MRI also contributed to the delay in his undergoing a second surgery and contributed to his injuries. As a result, Morris suffers from diminished reflexes, weakness, and difficulty in standing. Morris also has to rely on a walker to ambulate.

¶4 Morris filed suit against Swedish on February 14, 2006. On June 14, 2006, he amended the complaint to join HRN as a defendant because one of the nurses caring for Morris at Swedish was a contract nurse employed by HRN. Neither the anesthesiologist nor the surgeon was sued.

¶5 Morris initially designated the surgeon, Dr. Young, as his only expert. At his deposition, Dr. Young stated that he did not recall telling anyone that Morris's treatment failed to meet the proper standard of care. He also testified that he was uncertain "what the difference would have been" if the surgery to remove the hematoma had been performed 6 to 12 hours earlier than it actually was. Dr. Young observed that the distinction between an early and late response to a hematoma is typically measured in days, not minutes.

¶6 On March 29, 2007, approximately 10 weeks after Dr. Young was deposed, HRN moved for summary judgment dismissal. On May 3, 2007, one day before the scheduled hearing on HRN's summary judgment motion, Morris voluntarily dismissed his action without prejudice. Morris had not filed a response to HRN's pending motion.

¶7 On June 6, 2007, one month after dismissing the original lawsuit and just a few days before Morris's claim would be time barred by the applicable statute of limitations (SOL),[1] Morris's attorney sent both Swedish and HRN a two-sentence letter, providing notice of intent to bring a suit within 90 days as required by RCW 7.70.100, and a good faith request for mediation pursuant to RCW 7.70.110. On September 13, 2007, without any attempts at mediation, Morris refiled the lawsuit. The complaint attached a certificate of merit from an anesthesiologist certifying that there was a reasonable basis to believe that the conduct of the staff at Swedish was not in accord with the accepted standard of care. HRN moved for summary judgment, alleging that Morris's claims were time barred. HRN also claimed that Morris's certificate of merit was insufficient and that he could not substantiate the medical malpractice claims with adequate testimony.

¶8 The trial court held that Morris's new expert raised an issue of fact on liability, but that the claims were time barred, and that as a matter of law, Morris's attorney's request for mediation was not in good faith and thus failed

[1] RCW 4.16.350(3).

to toll the statute of limitations. The trial court further held that the legislature's July 22, 2007 amendments to the applicable statute did not apply to Morris's June 6 notice of intent to sue and mediation request. Morris appeals.

## ANALYSIS

■ ¶9 Medical malpractice lawsuits have a three-year statute of limitations.[2] The three years begin to run from the date of the act alleged to have caused the injury.[3] The action arose on June 11, 2004, the date of Morris's second surgery. Thus, the statute of limitations would have run on June 11, 2007.

■ ¶10 Morris's June 6, 2007 letter requesting mediation was a timely request whether we apply the date of mailing, the date of service, or the reasoning in the civil rules.[4] The effect of that letter was to toll the statute of limitations for one year under RCW 7.70.110:

> The making of a written, good faith request for mediation of a dispute related to damages for injury occurring as a result of health care prior to filing a cause of action under this chapter shall toll the statute of limitations provided in RCW 4.16.350 for one year.

■ ¶11 Swedish and HRN argue that the June 6 letter meets only two of the conditions enumerated in the statute: the notice was in writing and the underlying dispute was related to injuries resulting from health care. Swedish and HRN contend that Morris had already filed a cause of action (even if subsequently voluntarily dismissed) and therefore

---

[2] RCW 4.16.350(3) provides in pertinent part:

[An action] shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later . . . .

[3] *Gunnier v. Yakima Heart Ctr., Inc.*, 134 Wn.2d 854, 864, 953 P.2d 1162 (1998).

[4] CR 5(b)(2)(A) (service is "deemed complete" three days from mailing—in this case June 11, 2007, as June 9 was a Saturday).

the statute of limitations could not be tolled under this statute. We find no validity to this assertion. In the context of a summary judgment proceeding, a plaintiff has a right to voluntary nonsuit until the motion has been submitted to the court for determination.[5] Morris voluntarily dismissed his case pursuant to CR 41(a). Washington has interpreted the voluntary dismissal rule as rendering " 'the proceedings a nullity and leav[ing] the parties as if the action had never been brought.' "[6] Thus, Morris could pursue his cause of action as if the prior action had never occurred.

¶12 However, the trial court agreed with Swedish and HRN in holding that the June 6 letter did not toll the statue of limitations because there was no good faith effort by Morris to mediate the claim. Swedish and HRN argue that the June 6 letter was nothing more than a tactic employed by Morris's attorneys to toll the statute of limitations. The statute does not define "good faith," but the "standard definition of good faith is a state of mind indicating honesty and lawfulness of purpose."[7] We have also defined "good faith" in the context of the Uniform Anatomical Gift Act as " 'honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage.' "[8] Further, *Black's Law Dictionary* defines "good faith" as

[a] state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given

---

[5] *Paulson v. Wahl*, 10 Wn. App. 53, 57, 516 P.2d 514 (1973).

[6] *Beckman v. Wilcox*, 96 Wn. App. 355, 359, 979 P.2d 890 (1999) (internal quotation marks omitted) (quoting *Bonneville Assocs., Ltd. P'ship v. Barram*, 165 F.3d 1360, 1364 (Fed. Cir. 1999)).

[7] *Whaley v. State*, 90 Wn. App. 658, 669, 956 P.2d 1100 (1998) (citing *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986)): *see also Yuille v. State*, 111 Wn. App. 527, 533, 45 P.3d 1107 (2002) (following *Whaley's* definition of "good faith").

[8] *Sattler v. Nw. Tissue Ctr.*, 110 Wn. App. 689, 695, 42 P.3d 440 (2002) (internal quotation marks omitted) (quoting *Nicoletta v. Rochester Eye & Human Parts Bank, Inc.*, 136 Misc. 2d 1065, 519 N.Y.S.2d 928, 930 (1987)).

trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage.[9]

Although good faith is usually a question of fact, it may be resolved on summary judgment where no reasonable minds could differ on the question.[10] Good faith is examined by considering all of the relevant circumstances.[11] In the light most favorable to Morris, we evaluate good faith by examining whether he acted with honesty and lawfulness of purpose in light of all of the circumstances. Certainly nothing in this record demonstrates that Morris acted with dishonesty or unlawfulness of purpose in sending the June 6 request for mediation. In addition, the declaration of Morris's prior attorney indicates that he believed that a good case existed against Swedish and HRN. This establishes the requisite good faith with which a request for mediation must be made.[12]

*Certificate of Merit*

█ ¶13 Morris was required to file a certificate of merit alleging a breach of the applicable standard of care.[13] The certificate must be executed by a qualified expert and state that there is a reasonable probability that the defendant's conduct failed to meet the standard of care.[14] Failure to file a certificate of merit is grounds for dismissal.[15] The statute provides in pertinent part:

(1) In an action against an individual health care provider under this chapter for personal injury or wrongful death in

---

[9] BLACK'S LAW DICTIONARY 713 (8th ed. 2004).

[10] *Marthaller v. King County Hosp. Dist. No. 2*, 94 Wn. App. 911, 916, 973 P.2d 1098 (1999).

[11] *Whaley*, 90 Wn. App. at 669.

[12] RCW 7.70.100(1); Ulrich Boettger, *Efficiency Versus Party Empowerment— Against A Good-Faith Requirement In Mandatory Mediation*, 23 REV. LITIG. 1 (2004) ("Being open to a settlement is not an element of good faith.").

[13] RCW 7.70.150.

[14] RCW 7.70.150(3).

[15] RCW 7.70.150(5)(a).

which the injury is alleged to have been caused by an act or omission that violates the accepted standard of care, the plaintiff must file a certificate of merit at the time of commencing the action. . . .

(2) The certificate of merit must be executed by a health care provider who meets the qualifications of an expert in the action. If there is more than one defendant in the action, the person commencing the action must file a certificate of merit for each defendant.

(3) The certificate of merit must contain a statement that the person executing the certificate of merit believes, based on the information known at the time of executing the certificate of merit, that there is a reasonable probability that the defendant's conduct did not follow the accepted standard of care required to be exercised by the defendant.

. . . .

(5)(a) Failure to file a certificate of merit that complies with the requirements of this section is grounds for dismissal of the case.[16]

HRN argues that the certificate of merit is not acceptable because Morris filed only one certificate and there were two defendants. Morris argues that his failure to file two certificates is inconsequential and does not require dismissal, but only provided grounds for dismissal. HRN attempts to distinguish itself from Swedish and argues that the single certificate of merit does not differentiate between the two defendants.

¶14 The certificate of merit states:

I, Lorne Sheren, M.D., am familiar with the standard of care expected of reasonable and prudent hospital staff involved in caring for patients post-surgery. I have reviewed the information available to me at this time and believe that there is a reasonable probability that the conduct of the staff at Swedish Medical Center, regarding management of Daniel E. Morris post-surgery, did not follow the accepted standard of care required to be exercised.

---

[16] RCW 7.70.150.

The certificate of merit addresses the conduct of the staff at Swedish in managing the patient after surgery. The staff at Swedish who tended to the nursing of Morris included nurses who worked for Swedish as well as nurses with whom Swedish contracted to work as their staff. We believe that the statutory requirement focuses on the certificate and not on the number of defendants. Here, the certificate applies to postsurgical management of Morris, hence to both defendants.

¶15 HRN cites to a final bill report addressing health care liability reform to support its position that failure to file the certificate of merit complying with the requirements "results in dismissal of the case."[17] But that final bill report does not even mention the filing of separate certificates for each defendant. Rather, it primarily focuses on the qualified expert stating that there is a reasonable probability that the defendant's conduct failed to meet the requisite standard of care. Moreover, the final report notes that a court may grant up to a 90-day extension to file such certificate. Likewise, HRN's citation to *Hardesty v. Stenchever*, a risk-management case, is inapposite.[18] There the plaintiff failed to file a 60-day notice of claim as required by statute resulting in dismissal of the suit.[19] Strict compliance with notice of claim statutes has consistently been held to be a condition precedent to recovery. See RCW 4.96.010(1), which provides that "[f]iling a claim for damage's within the time allowed by law shall be a condition precedent to the commencement of any action claiming damages."

¶16 HRN further argues that the certificate of merit was inadequate because it did not state that the inadequate care caused injury to Morris. But there is no such requirement; rather, the only requirement is a belief that there is a reasonable probability that the defendant's conduct did

---

[17] Final B. Rep. on Second Substitute H.B. 2292, at 7, 59th Leg., Reg. Sess. (Wash. 2006).

[18] 82 Wn. App. 253, 917 P.2d 577 (1996).

[19] *Hardesty*, 82 Wn. App. at 259.

not meet the required standard of care based on the information known at the time. Dr. Sheren's statement does that. We find that service of the complaint with the attached certificate of merit sufficient. To hold otherwise would require us to elevate form over substance.

¶17 Because we find that the statute of limitations is tolled for one year under RCW 7.70.110, we need not reach the other issues raised regarding other portions of the statute and whether such sections are retroactive. We reverse the trial court's summary judgment dismissal and remand for further proceedings.

ELLINGTON and LAU, JJ., concur.