63 P.3d 841 (2003)
115 Wash.App. 740
Stephen K. EUGSTER, et ux., Appellants,
v.
CITY OF SPOKANE, a Washington First Class Charter City; and the Spokane City Council, Respondents.
No. 21473-7-III.
Court of Appeals of Washington, Division 3, Panel Three.
February 20, 2003.
*843 Stephen K. Eugster, Eugster Law Offices PSC, Spokane, WA, for Appellants.
Milton G. Rowland, Attorney at Law, Spokane, WA, for Respondents.
*842 SWEENEY, J.
State law requires municipalities to provide counsel at public expense to defend officials in suits arising from the performance of their official duties. RCW 4.96.041(1). Spokane City Council member Stephen K. Eugster is a lawyer. He contends that because RCW 4.96.041 does not say otherwise, it requires the City of Spokane to hire him to defend himself and his wife in a suit filed by a developer. We disagree. Moreover, the Spokane City Charter prohibits any city officer from benefiting from a city contract. And the charter does not conflict with RCW 4.96.041. We also reject Mr. Eugster's equal protection argument. We therefore affirm the trial court's dismissal of his petition for writ of mandamus.

FACTS
Stephen Eugster is an attorney and an elected member of the Spokane City Council. He sued the City of Spokane and the developers of the River Park Square project both in his private and official capacities. In June 2001, the developers answered and counterclaimed against the city council members and the mayor in their official capacities. The developers also sued former mayor John Talbot and his wife, and city council members Steve Corker and Cherie Rodgers, as well as Mr. Eugster and his wife as individuals.[1] The developers sought compensatory and punitive damages under various common law and statutory theories, including interference with their contractual rights and business expectations. The allegations included unspecified tortious conduct by the named officials, both within and beyond the scope of their official duties.
Mr. Eugster responded to the counterclaim by asserting the defense of citizen immunity: "A person who in good faith communicates a complaint or information to any agency of federal, state, or local government... is immune from civil liability for claims based upon the communication...." Former RCW 4.24.510 (1999).
He notified the city attorney of the action against him and requested indemnification under Spokane Municipal Code (SMC) 3.07.200. SMC 3.07.200 sets out the procedure for providing a legal defense. It calls for the city council, upon the recommendation of the mayor, to authorize the city attorney to defend. Mr. Eugster did not want the city attorney to represent him, however. He felt the city attorney was not aggressively pursuing numerous portions of what has come to be known as the River Park Square litigation. He also felt the city attorney's office had a conflict of interest with respect to himself as a defendant. Mr. Eugster was willing, however, to accept city-appointed counsel to pursue actions against the city in which he was the plaintiff. But he insisted that only his own law firm could defend him and his wife against the developers' counterclaim.
On August 23, the city attorney responded to Mr. Eugster's request by explaining that both the municipal code and the city charter prohibit the City from appointing Eugster Law Offices, PSC. Spokane City Charter Section 36 prohibits the City from entering into a contract with a city officer from which the officer benefits directly or indirectly. The city attorney acknowledged that the City's interest in minimizing its liability created a conflict of interest. The developers' claims against Mr. Eugster asserted tortious conduct both within and exceeding his official duties. But the exact nature of their complaints *844 was not clear from the pleadings. The City was not responsible for conduct outside the actual or good-faith-belief scope of official duties.
The city attorney offered to retain independent counsel to represent the Eugsters' interests, subject to a reservation of rights. The City offered to provide the Eugsters with independent counsel on the same terms as counsel had been offered to Mr. Corker, Ms. Rogers, and Mr. Talbot.
The city council rejected a proposed council resolution offered by Mr. Eugster to retain his firm, Eugster Law Offices, of which Mr. Eugster is the sole shareholder. The City relied on the anti-corruption provisions of City Charter Section 36. Mr. Eugster engaged his own firm, nonetheless.
Mr. Eugster petitioned the Spokane superior court for a writ of mandamus to compel the City to appoint Eugster Law Offices to represent him. The court denied his writ. It concluded that RCW 4.96.041 did not require the City to retain Mr. Eugster's own law firm, and that the City Charter prohibited it.
Mr. Eugster petitioned for direct review by the Supreme Court, which denied his petition and transferred the case to us.

DISCUSSION
Mr. Eugster contends that, because it does not expressly provide otherwise, RCW 4.96.041 operates to:
(1) guarantee him the right to retain counsel of his choice and
(2) require that the City must either:
(a) contract directly with his chosen counsel to conduct the defense, or
(b) reimburse Mr. Eugster for expenses he incurs by contracting with counsel himself.
The City responds that RCW 4.96.041 does not give Mr. Eugster the absolute right to represent himself.
STATUTORY INTERPRETATION
Standard of Review. Statutory (and municipal code) interpretation is a question of law. So our review here is de novo. State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001), cert. denied, 534 U.S. 1130, 122 S.Ct. 1070, 151 L.Ed.2d 972 (2002). We must construe legislative enactments to carry out their manifest intent. City of Seattle v. Fontanilla, 128 Wash.2d 492, 498, 909 P.2d 1294 (1996). We read the statute as a whole, giving effect to all its terms and harmonizing related provisions wherever possible. Id.
State Statute. RCW 4.96.041(1) permits an officer or employee of a local governmental entity (city) who is sued for damages for "acts or omissions while performing or in good faith purporting to perform his or her official duties" to request the city to "authorize the defense of the action or proceeding at the expense of the [city]." The city may create a procedure to determine whether the acts or omissions were within the scope of official duties or in good faith purported to be within those duties. RCW 4.96.041(2). If they were, the request will be granted. If the request is granted, "the necessary expenses of defending the action or proceeding shall be paid by the [city]." RCW 4.96.041(2).
RCW 4.96.041 thus requires legal representation at public expense. But it is silent on the procedures by which this is to be achieved. The statute leaves it to each local government entity to devise appropriate procedures. The legislature could have permitted a municipal officer to be represented by private counsel of choice whenever a conflict of interest exists. But it did not do so. See, e.g., Mothersell v. City of Syracuse, 952 F.Supp. 112, 115 (N.D.N.Y.1997) (discussing N.Y. Pub. Off. Law § 18(3)(c) (McKinney 1988)).
Once the city accepts the defense, it is obligated to pay any adverse judgment. RCW 4.96.041(2). In the usual case, therefore, the official seeking protection will have no further interest in whether the city attorney or outside counsel is retained. The statute simply does not address the possibility of a conflict of interest between the agent and the city. There is, therefore, no reason for the legislature to specify the precise mechanism by which a local government entity must accomplish representation.
*845 The City argues that RCW 4.96.041 does not require an indemnification policy broader than that provided by SMC 3.07.200. It is correct.
Spokane Municipal Code. SMC 3.07.200 is the Spokane indemnification policy which implements RCW 4.96.041. SMC 3.07.200 provides that the city will provide "defense and legal representation" for its agents who are sued for acts or omissions arising out of their official duties.
The ordinance outlines a procedure roughly as follows. When a city agent tenders a defense, the mayor, assisted by the city attorney and the city risk manager, makes a preliminary determination that the conduct is within the scope of official duties. If it is, the city "provides defense and legal representation" to the agent. SMC 3.07.200(A). If the "possibility exists" that the city will disclaim responsibility for the conduct, the city so advises the agent and "recommends that the agent retain his or her own legal counsel." SMC 3.07.200(B). The final decision to indemnify is made by the city council. SMC 3.07.200(A).
A city council member is an agent for the purposes of indemnification. SMC 3.07.210(A)(2); SMC 1.02.080(C)(1). The indemnification coverage extends to the agent's spouse and the marital community. SMC 3.07.210(C).
"Unless and until it is determined that the City is not responsible for the agent's conduct, the City defends, settles and pays on behalf of the agent any amounts for which the agent is liable to the extent the liability arises from acts or omissions within the scope of this chapter." SMC 3.07.200(C) (emphasis added).
SMC 3.07.200 requires that the city defend and provide representation for claims for acts or omissions in the performance of an agent's duties. The city attorney is the legal advisor of the city officers. He or she conducts all cases in court and all other actions and proceedings not in charge of special counsel, to which the city may be a party or in which it may be interested. Spokane City Charter § 29.
But here, it was not possible to determine whether the allegations against Mr. Eugster fell, even arguably, within the scope of his council duties. Therefore, the City of Spokane defended the Eugsters appropriately. Recognizing the potential conflict of interest, the city attorney offered to defend via special counsel retained under Charter Section 33.
This is more than RCW 4.96.041 requires. Mr. Eugster insists, nonetheless, that SMC 3.07.200 conflicts with RCW 4.96.041 to the extent that it does not guarantee him the absolute right to retain his own counsel. But the plain language of the statute does not support this contention. RCW 4.96.041 imposes no specific duty on a city in those circumstances where a potential conflict of interest exists for the city attorney.
Mr. Eugster's wife, Ms. Roloff, also does not have the right to her own independent counsel. SMC 3.07.210(C) includes her and the marital community in the indemnification offered to Mr. Eugster. To the extent that her legal interests may diverge from his, the City owes her no defense.
Spokane City Charter Section 33. The city council, at any time, may employ other or special counsel to take charge of special matters or to assist the city attorney. Spokane City Charter § 33.
The City maintains that Section 33 is the only authority under which the mayor may appoint and the city council approve any special counsel retained by the city. Mr. Eugster argues that the authority to engage special counsel under Section 33 does not apply. He argues that, under RCW 4.96.041, the city council does not employ counsel for the Eugsters; the Eugsters employ counsel for themselves.
The city charter contemplates two categories of legal proceedings: those conducted by the city attorney, and those assigned to special counsel. Under Charter Section 29, as the legal advisor of the city officers, the city attorney conducts "all cases in court and all other actions and proceedings not in charge of special counsel, to which the city may be a party or in which it may be interested." If special circumstances preclude the city attorney's *846 office from defending, Section 33 permits the city council to retain special counsel.
Here, the City clearly has an interest in the litigation. It is obligated to pay any adverse judgment if its officers acted in good faith. The circumstances are also special because claims are asserted against Mr. Eugster both in his capacity as a council member and as an individual. And SMC 3.07.200 does not provide for the situation in which an agent is sued in both official and unofficial capacities. To further complicate matters, the City cannot determine in advance what conduct falls in which capacity.
The city attorney is, then, conflicted out of the representation. The municipal code and city charter provide for special counsel to be appointed under Charter Section 33. Section 33 unambiguously provides that the mayor and city councilnot the agent-defendant will retain counsel, i.e., contract with counsel for services.
Spokane City Charter Section 36. Officers or employees of the city may not have any interest in city contracts. Spokane City Charter § 36. The relevant subsection is (c): "All contracts of the city shall be free from all influence of or benefit to, any officer or employee of the city." This applies to "any contract to which the city shall be a party," except for contracts to pay the lawful compensation or salary. Spokane City Charter § 36(c).
Mr. Eugster contends that Charter Section 36 does not apply because the City would not be a party to the contract between himself and Eugster Law Offices. And, even if Section 36 did apply, it would take away what RCW 4.96.041 grants.
The charter prohibition does not, however, apply solely to contracts to which the city is a signatory. It applies to every transaction in which the city engages. Whether by paying Mr. Eugster directly or by retaining him as his own special counsel, Charter Section 36 prohibits the city council from approving an agreement from which Mr. Eugster derives financial or other benefit, either directly or indirectly. This interpretation harmonizes Charter Section 6, which precludes any elective official of the city from engaging in "any other capacity in city employment or office." This would preclude Mr. Eugster, an elected official, from accepting an appointment even if one were offered.
EQUAL PROTECTION
Mr. Eugster argues that, if Charter Section 36 does apply and if it is not superseded by RCW 4.96.041, then it is unconstitutional as applied to him. He contends it operates to deny him and Ms. Roloff equal protection of the laws. This is because other council members named in the developers' counterclaim, namely, former mayor Talbot and council member Corker, were allowed to freely choose their own attorneys. By denying the Eugsters the same opportunity, he contends, the City discriminated against them. This is wrong.
Statutory classifications are subject to the equal protection clauses of both state and federal constitutions: those who are similarly situated with respect to legitimate purposes of the laws must receive like treatment. Medina v. Pub. Util. Dist. No. 1 of Benton County, 147 Wash.2d 303, 312, 53 P.3d 993 (2002). But unless a protected class is involved, judicial scrutiny is minimal. The challenged provision will be upheld so long as it applies equally to all members of the class, is based on reasonable distinctions between class and non-class members, and bears a rational relationship to the purpose of the regulation. Am. Network, Inc. v. Utils. & Transp. Comm'n, 113 Wash.2d 59, 77-78, 776 P.2d 950 (1989).
The right to bring suit against political subdivisions of the state and its municipalities was created by statute in 1967 when the legislature waived sovereign immunity. Medina, 147 Wash.2d at 312, 53 P.3d 993 (citing LAWS OF 1967, ch. 164, §§ 1, 4). The right to sue the state is not a fundamental right; it is statutory. Id. It follows then that the state can place limitations upon that right. Id. The Washington State Constitution, moreover, expressly reserves to the legislature the right to regulate lawsuits against governmental entities. The legislature "shall direct by law, in what manner, and in what courts, suits may be brought against the *847 state." CONST. art. II, § 26; Medina, 147 Wash.2d at 312, 53 P.3d 993.
Mr. Eugster does not contend the statute, ordinance, or charter provisions at issue here are unconstitutional as written. He does not claim to be a member of a protected class. The class to which RCW 4.96.041, SMC 3.07.200, and Charter Section 36 apply is city officers and employees. And their provisions apply equally to all members of that class. The City has a legitimate interest in distinguishing between elected city officers and outside entities in determining who may benefit from transactions with the city. This interest is rationally related to the purpose of these provisionsto insulate city officers from exposure to actual or perceived corruption.
MOOT QUESTION
The City suggests that this appeal is moot because the court can no longer grant a writ of mandamus compelling the City to comply with Mr. Eugster's requirements that his own law firm be recognized as counsel for the purposes of indemnification in this matter. Mr. Eugster and the City have now reached an agreement. Mr. Eugster has selected independent counsel at the City's expense.
An appeal is technically moot if we cannot provide the basic relief sought. Orwick v. City of Seattle, 103 Wash.2d 249, 253, 692 P.2d 793 (1984); Eugster v. City of Spokane, 110 Wash.App. 212, 228-29, 39 P.3d 380, review denied, 147 Wash.2d 1021, 60 P.3d 92 (2002). We may, however, decide a moot appeal that involves matters of continuing and substantial public interest. Westerman v. Cary, 125 Wash.2d 277, 286, 892 P.2d 1067 (1994).
We consider three primary factors: (1) the public or private nature of the issue; (2) whether an authoritative determination is desirable for the future guidance of public officers; and (3) whether the issue is likely to recur. Hart v. Dep't of Soc. & Health Servs., 111 Wash.2d 445, 448, 759 P.2d 1206 (1988).
This issue is not technically moot because, if we reverse the superior court and order that the writ of mandamus be granted, Mr. Eugster would receive the basic relief he seeks: recognition of the statutory and constitutional right of a city officer to represent himself.
Even if it were moot, however, the issue is a public one. An authoritative determination is desirable. And the situation is highly likely to recur, given the litigious relationship between Mr. Eugster and the City of Spokane.
We affirm the judgment of the trial court.
WE CONCUR: BROWN, C.J., and SCHULTHEIS, J.
NOTES
[1] Marilee K. Roloff is Mr. Eugster's wife. We follow Mr. Eugster's example and refer to Mr. Eugster, Ms. Roloff, and their marital community collectively as "the Eugsters."