IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WASHINGTON COUNTIES RISK POOL, a public entity, | ) ) ) | No. 32769-8-III |
| Respondent, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| TAMARA MARIE CORTER, a married individual, STEVE GROSECLOSE, an individual, and DOUGLAS COUNTY, a municipal corporation, | ) ) ) ) ) | |
| Appellants. | ) | |

SIDDOWAY, C.J. — After Tamara Marie Corter recovered over $120,000 in damages, fees, and costs in a federal civil rights action against her ex-husband, Douglas County Sheriff's Detective Steve Groseclose, the two parties entered into an assignment of Mr. Groseclose's rights against the county and the Washington Counties Risk Pool (Risk Pool), and a qualified covenant not to execute under which Ms. Corter would first pursue recovery of her judgments from the county and the Risk Pool.

In resolving this declaratory judgment action brought by the Risk Pool as well as cross claims asserted by the county, Ms. Corter and Mr. Groseclose, the superior court granted summary judgment to the Risk Pool and the county, declaring that neither owed a duty to indemnify Mr. Groseclose against the federal judgments.

Ms. Corter[1] argues on appeal that the superior court erred because the county waived its right to deny a duty to indemnify Mr. Groseclose and because the federal court's conclusion that Mr. Groseclose was acting "under color of law" strongly supports a conclusion that he was acting within the scope of his official duties within the meaning of the local government indemnification statute, the county's indemnification ordinance, and the Risk Pool's joint self-insured liability policy.

The evidence presented was insufficient as a matter of law to support any waiver by the county. It supports the superior court's conclusion as a matter of law that Mr. Groseclose was not acting within the scope of his official duties. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In 2009, Steve Groseclose, a detective with the Douglas County Sheriff's Department, used his access to Spillman, the law enforcement database, to view an incident report involving his ex-wife, Tamara Corter. Mr. Groseclose and Ms. Corter had two sons from their marriage and Ms. Corter had primary custody of both boys. Mr. Groseclose used information obtained from the incident report, including information about Ms. Corter's health, to support a guardianship petition. Mr. Groseclose had no work-related reason to view the incident report.

---

[1] While both Ms. Corter and Mr. Groseclose appeal, for simplicity's sake we will treat Ms. Corter, the assignee of the claims against the Risk Pool and the county, as the sole appellant hereafter.

2

In March 2012, Ms. Corter filed suit against Mr. Groseclose and Douglas County under 42 U.S.C. § 1983, alleging that acting under color of state law, her ex-husband had violated her constitutional right to privacy. She alleged that the county failed to properly train or supervise Mr. Groseclose and that it ratified his actions.

The county is a member of the Washington Counties Risk Pool and is insured through the Risk Pool's joint self-insured liability policy. In addition to providing liability insurance to member counties, the policy insures a county's past and present employees, elected and appointed officials, and volunteers against liability for acts or omissions "while acting or in good faith purporting to act within the scope of their official duties for the member county or on its behalf," subject to and conditioned upon the county's authorization of indemnification of such persons in accordance with RCW 4.96.041. Clerk's Papers (CP) at 230.

Risk Pool bylaws provide that when the Risk Pool receives notice of a claim by an entity or individual arguably insured under the policy, it may provide legal counsel for defense of the claim and at the same time reserve its right to later determine coverage. If the Risk Pool intends to defend under a reservation of rights, it must provide the affected party with a concise statement of reasons for its reservation. If a final determination of coverage cannot be made until the facts are determined by a court of law, the Risk Pool's claims manager is required to make a final determination of coverage within a reasonable time after the final decision of the court.

3

In April 2012, shortly after Ms. Corter filed her complaint, the Risk Pool's claims manager notified Mr. Groseclose that the Risk Pool would provide a legal defense but was reserving its right to refuse to indemnify him against any judgment entered against him. Its notice informed Mr. Groseclose that it would decline to pay a judgment against him "if it is found that you were not acting in good faith on behalf of Douglas County at the time of the alleged conduct." CP at 177.

In September 2013, the federal district court dismissed Ms. Corter's claims against the county. Following that dismissal, the Risk Pool notified Mr. Groseclose that it would continue to provide him a defense notwithstanding dismissal of the claims against the county, but that the defense remained subject to the original reservation of rights.

A jury trial in the federal action in late October 2013 resulted in a jury verdict that Mr. Groseclose, acting under color of law, violated Ms. Corter's constitutional right to privacy and that Ms. Corter had suffered damages of $60,000. With fees and costs, Ms. Corter ultimately obtained judgments totaling $121,025.50. On November 6, 2013, the Risk Pool notified Mr. Groseclose of its decision to refuse to pay the initial judgment entered against him on the basis that "at the time you accessed the Spillman System and obtained the constitutionally protected confidential information regarding Ms. Corter, you were not acting in good faith on behalf of Douglas County." CP at 274. The letter explained Mr. Groseclose's right to appeal that determination, cited to applicable

provisions of the Risk Pool bylaws, and informed Mr. Groseclose that he had 30 days from the date of the letter to appeal.

Twenty-nine days later, Mr. Groseclose and Ms. Corter entered into an assignment of Mr. Groseclose's rights against the county and the Risk Pool in exchange for Ms. Corter's qualified covenant not to execute her judgments against Mr. Groseclose "unless and until all possible avenues of settlement, litigation, and appeals against [the county and/or the Risk Pool/insurers affiliated with the county and its agents] have been completely exhausted and have not resulted in a judgment or settlement against those parties." CP at 278.

In January 2014, the Risk Pool filed a declaratory judgment action against Mr. Groseclose, Ms. Corter and the county seeking a declaration that it had no duty to indemnify Mr. Groseclose for the judgments entered against him in Ms. Corter's action and that it had not breached a duty owed any of the defendants. It asserted, among other matters, that neither Mr. Groseclose nor Ms. Corter had appealed its November 6, 2013 decision denying coverage.

The county answered the complaint and filed a cross claim against Mr. Groseclose and Ms. Corter seeking a declaration that it owed no duty to indemnify Mr. Groseclose for the judgments. Mr. Groseclose and Ms. Corter filed cross claims against the county, seeking a declaration that the county was liable to pay the federal judgments.

5

All parties eventually moved for summary judgment. The court granted the motions filed by the Risk Pool and the county, ruling that neither had a duty to indemnify Mr. Groseclose against the federal court judgments. It denied Ms. Corter's and Mr. Groseclose's cross motions for summary judgment and dismissed their cross claim with prejudice. Ms. Corter and Mr. Groseclose appeal.

## ANALYSIS

Ms. Corter argues that the trial court's summary judgment rulings were in error for several reasons. The issues that prove dispositive on appeal are (1) whether the county waived its right to deny indemnification to Mr. Groseclose, and (2) whether, as a matter of law, the actions for which Mr. Groseclose was held liable were not within the scope of his official duties. We address the two issues in turn.

### *I. As a matter of law, the county did not waive its right to deny indemnification to Mr. Groseclose*

We begin with the standard of review. When reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is proper when a moving party shows there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). All facts and inferences will be construed in the light most favorable to the nonmoving party. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate "only if,

6

from all the evidence, a reasonable person could reach only one conclusion." *Folsom*,

135 Wn.2d at 663.

By statute, local governments may adopt legislation under which their past or

present officers, employees, or volunteers who are sued for damages arising from acts or

omissions "while performing or in good faith purporting to perform his or her official

duties" may ask the government entity to defend them at government expense. RCW

4.96.041(1). If a past or present officer, employee or volunteer is represented at

government expense pursuant to such local legislation and the court hearing the action

finds that the represented defendant "was acting within the scope of his or her official

duties" and enters a judgment against him or her, then the statute provides that the

judgment creditor shall seek satisfaction for nonpunitive damages only from the local

governmental entity. RCW 4.96.041(4).

Before Ms. Corter's lawsuit, Douglas County had adopted an indemnification

ordinance as permitted by RCW 4.96.041, codified in chapter 2.90 of the Douglas County

Code (DCC). The following sections are relevant to Ms. Corter's argument on appeal:

2.90.020 Request for defense of claim.

An officer, employee or volunteer may request that Douglas County defend
and pay the necessary expenses of defending any claim arising from acts or
omissions while performing or in good faith purporting to perform his or
her official duties. Such request shall be in writing and signed by the
person or his or her attorney, shall be filed with the board of county
commissioners, and shall include a summary of the claim. If the claim is

7

pending, then a copy of the written claim, demand or lawsuit shall be attached to the request.

2.90.030 Authorizing defense of claim.

A.    Douglas County shall grant the request to defend a claim and pay the necessary expenses of defense upon a determination that the claim is based upon an alleged act or omission of the officer, employee or volunteer which was, or in good faith purported to be, within the scope of his or her official duties. Such determination shall be made as follows:

1.    By a majority vote of a quorum of the board of county commissioners consisting of members not named as a party to such claim; or

2.    If a quorum of unnamed members of the board is not possible, then by a written opinion of legal counsel, other than the prosecuting attorney, as selected by the board. Such legal counsel shall not be an attorney or member of a law firm who has performed services within the past three years for Douglas County.

B.    Douglas County shall not defend or pay for the expense of defending a claim against an officer, employee or volunteer based upon or which alleges unlawfully obtaining personal benefits while acting in his or her official capacity.

C.    Douglas County shall not pay any expenses of defending a claim which are paid or incurred by an officer, employee or volunteer prior to receipt of a proper written request by the board of county commissioners. Douglas County shall not pay any expenses of defending a claim in advance of services being rendered or costs being incurred.

2.90.050 Payment of nonpunitive monetary judgment.

When Douglas County has defended a claim against an officer, employee or volunteer pursuant to this chapter and the court hearing the action has found that the officer, employee or volunteer was acting within the scope of his or her official duties, Douglas County shall pay any final nonpunitive monetary judgment entered on such claim, after termination of all appellate

8

review, if any. Pursuant to RCW 4.96.041, a judgment creditor shall seek satisfaction for a nonpunitive monetary judgment only from Douglas County and a judgment for nonpunitive damages shall not become a lien upon any property of the officer, employee or volunteer.

(Citations omitted.)

Ms. Corter's cross claim against the county was predicated on her allegations that Mr. Groseclose "was represented at the expense of Douglas County under RCW 4.96.041(1)" and that the county was in violation of a "requirement in RCW 4.96.041(4)" that it pay the federal judgments. CP at 61-62 (Cross claim at ¶¶ 2, 6). The county denied the allegations contained in paragraphs 2 and 6 of Ms. Corter's cross claim, contending in response that Mr. Groseclose "was represented in the case of *Corter v. Douglas County, et al.*, by an attorney selected and paid for by the Plaintiff Washington Counties Risk Pool, and that Douglas County paid a deductible to the Plaintiff, which includes all attorney's fees and other defense costs incurred by the Pool up to the County's deductible limit." CP at 54.

The construction of a statute or local legislation presents a question of law, which we review de novo. *Colby v. Yakima County*, 133 Wn. App. 386, 389, 136 P.3d 131 (2006) (citing *Eugster v. City of Spokane*, 115 Wn. App. 740, 745, 63 P.3d 841 (2003)). "We must construe legislative enactments to carry out their manifest intent." *Id.* (quoting *Eugster*, 115 Wn. App. at 745). If a statute's meaning is plain on its face, we give effect to that plain meaning as the expression of what was intended. *Tracfone Wireless, Inc. v.*

9

*Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). "Plain meaning 'is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

Ms. Corter did not demonstrate below that Mr. Groseclose ever submitted a request that the county authorize defense of the action against him or that the county commissioners ever approved the county's defense of her ex-husband. She argues that a request for authorization of a county defense is optional, pointing to the operative language "*may* request the local government entity to authorize the defense" in RCW 4.96.041(1) (emphasis added). But when the statute is read as a whole, that language merely recognizes that an employee, official or volunteer might not be interested in a government-provided defense. If an employee does want to be defended at government expense, DCC 2.90.030(C) mandates not only that the employee make a request, but that he or she make it in writing, providing that the county "shall not pay any expenses of defending a claim which are paid or incurred by an officer, employee or volunteer prior to receipt of a proper written request by the board of county commissioners."

In this case, an undisputed declaration of Susan Looker, the Risk Pool claims manager, states that it was the Risk Pool, not the county, that appointed Mr. Groseclose's lawyer to defend him at the *Risk Pool's* expense. CP at 200. Ms. Corter has failed to

10

respond with any evidence that the Douglas County Commissioners made the requisite finding that Mr. Groseclose was, or in good faith purported to be acting within the scope of his official duties or that it authorized him to be represented at county expense. She has demonstrated only that the county admits paying to the Risk Pool an apparently unallocated $25,000 deductible.

Ms. Corter argues that the county's payment of the $25,000 deductible operated as, or was some evidence of, legislative approval of indemnification of her ex-husband's legal expenses. And she argues that unlike the Risk Pool's joint self-insured liability policy, which permits deferral of a coverage decision, RCW 4.96.041 and the county's ordinance create a "thumbs up" or "thumbs down" decision making process under which, once the legislative authority makes the determination that an employee's acts or omissions "were, or in good faith purported to be, within the scope of his or her official duties" and represents the employee at county expense, it is bound to indemnify the employee from all but punitive damages by RCW 4.96.041(4) if "the court hearing the action [finds] that the officer, employee, or volunteer was acting within the scope of his official duties." RCW 4.96.041(2), (4). On this latter point (that the county can be bound by its initial decision, depending on later events) she is correct. But she is not correct in contending that the county could waive the approval process. By the clear terms of RCW 4.96.041 and the county code, it cannot.

11

To establish that Mr. Groseclose was represented at the expense of the county "*under* RCW 4.96.041(1)," which RCW 4.96.041(4) requires, Ms. Corter must trace the representation to the required written request. RCW 4.96.041(1) (emphasis added). Even more importantly, she must show that the local legislative authority granted the request using a procedure created by ordinance or resolution, having found that "the acts or omissions of the officer, employee, or volunteer were, or in good faith purported to be, within the scope of his or her official duties." RCW 4.96.041(2). Under the county code, where no Douglas County commissioner was named a party to the claim, a determination by a majority vote of a quorum of the board of county commissioners was required. DCC 2.90.030(A)(1).[2] None is demonstrated.

The county's payment of the $25,000 deductible is a red herring. Even if there were evidence that the deductible was regarded by the Risk Pool or the county as attributable in part to Mr. Groseclose's defense, that would only show that the county violated DCC 2.90.030(C) by making a payment of defense costs before receiving a written request for a defense and that it violated RCW 4.96.041 and DCC 2.90.030(A) by making such a payment before determining that Mr. Groseclose had acted, or in good faith purported to act, within the scope of his official duties. Even if it failed to follow

---

[2] This assumes that since no member of the board of county commissioners was named a party to Ms. Corter's federal lawsuit, a quorum of the unnamed commissioners would have been "possible" under DCC 2.90.030(A).

12

the statutorily and code-required procedures, its failure would not bind it to indemnify Mr. Groseclose.

### II. As a matter of law, the federal action did not determine that Mr. Groseclose was acting within the scope of his official duties

The county does not contend that an employee like Mr. Groseclose could not seek indemnification belatedly, but there is a second reason why, as a matter of law, the trial court properly decided the parties' motions for summary judgment: the federal action did not determine that Mr. Groseclose was acting within the scope of his official duties.

A second statutory requirement before the county is bound to answer for a judgment against Mr. Groseclose is that "the court hearing the action has found that the officer, employee, or volunteer was acting within the scope of his or her official duties." RCW 4.96.041(4). The parties sometimes argue this issue on appeal as if *we* are supposed to analyze the "scope of official duty" issue ourselves, but both the statute and the county code are concerned with what "the court hearing the action has found." *Id.*; DCC 2.90.050. To determine what the federal court found in this case, we review the verdict and the pertinent jury instructions.[3] "What the federal court found" is an issue of law that we review de novo.[4]

---

[3] We could also review any final rulings by the court on issues to which Mr. Groseclose was a party. The only rulings by the court that have been drawn to our attention on appeal addressed disputes between Ms. Corter and the county, however.

[4] Given the nature of this inquiry, the parties' dispute over whether collateral

13

The relevant record comprises two jury instructions and the verdict form. The court gave the following jury instruction on acting "under color of law":

> A person acts "under color of law" when the person acts or purports to act 1) in the performance of official duties under any state, county, or municipal law, ordinance, or regulation; 2) in some meaningful way either to his governmental status or to the performance of his duties; or 3) under pretense of his governmental status.

CP at 137.

Another instruction of the court informed the jury that if it found that Mr. Groseclose had acted under color of law, then Ms. Corter must also establish several other facts by a preponderance of the evidence, including that

> [t]he Defendant had no legitimate law enforcement purpose to access [the] incident report pertaining to the Plaintiff;

and

> [t]here was no public need for the Defendant's access to, and disclosure of, the sensitive personal medical information regarding the Plaintiff.

CP at 138-39.

The jury completed the special verdict form by answering yes to the question:

> Did the Defendant act under color of law when he accessed the March 30, 2009 law enforcement incident report via Spillman?

---

estoppel is an issue on appeal misses the mark. What the federal court found is a matter of direct concern under the statute and code; when we look to what happened in the federal court, we are not examining the federal proceedings for their issue preclusive effect.

CP at 149. It also answered yes to the question:

> Did the Defendant's act(s) deprive the Plaintiff of her right to informational privacy under the U.S. Constitution?

CP at 150.

Ms. Corter points to the fact that the federal jury returned a special verdict finding that Mr. Groseclose acted "under color of law" and argues that whether someone was acting "under color of law" is synonymous with whether he or she "was acting within the scope of his or her official duties."

The county and Risk Pool disagree, and argue that "acting within the scope of his or her official duties" should be construed as synonymous to "acting within the scope of employment." The definition of "scope of employment" provided by the *Restatement (Third) of Agency* has been held to reflect the meaning given that term by Washington courts:

> "An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer."

*Melin-Schilling v. Imm*, 149 Wn. App. 588, 592, 205 P.3d 905 (2009) (quoting RESTATEMENT (THIRD) OF AGENCY § 7.07(2) (AM. LAW INST. 2006)).

What limited case law exists under chapter 4.96 RCW and analogous statutes supports the position of the county and Risk Pool. *Whatcom County v. State*, 99 Wn.

15

App. 237, 993 P.2d 273 (2000) addressed whether an employee's acts or omissions fell within the scope of his official duties as that term is used in chapter 4.92 RCW, a statute dealing with indemnification of State employees, officials, and volunteers. Chapter 4.92 RCW is identically framed in relevant respects to chapter 4.96 RCW.[5] The case involved a deputy prosecutor sued for negligence and violation of civil rights after he advised a corrections officer, in error, that an offender being held on bail for felony violation of a protection order was eligible for release. Within days, the offender murdered the party protected by the earlier violated order. The county brought a declaratory judgment action seeking a declaration that the State, not the county, was required to provide a defense to the deputy prosecutor.

Part of the analysis on appeal involved defining the deputy prosecutor's functions under state law, in order to determine whether he was acting for the state or the county in performing the function of advising the corrections officer on the offender's right to release. *Whatcom*, 99 Wn. App. at 243. In holding that the State was required to provide

---

[5] Key provisions in the two chapters are parallel. *E.g.*, RCW 4.92.060 (state defense of an action for damages may be requested by a state official, employee, or volunteer "arising from acts or omissions while performing, or in good faith purporting to perform, official duties"); .070 (the request shall be granted if the attorney general finds that the requestor's "acts or omissions were, or were purported to be in good faith, within the scope of that person's official duties"); and .075 (when representation has been authorized; the body presiding over the action or proceeding has found that the officer, employee, or volunteer was acting within the scope of his or her official duties; and a judgment has been entered against him or her pursuant to chapter 4.92 RCW or 42 U.S.C. § 1981 et seq.; then the judgment creditor shall seek satisfaction only from the state).

16

a defense under RCW 4.96.060 and .070, the court concluded that the prosecutor's advice was sought by the corrections officer because of the prosecutor's familiarity with the offender's case, with the result that he was not merely advising a county official but was engaged in action "directly related to his prosecution of [the offender] under state law." *Id.* at 246-47. The court observed, "It is not necessary that the acts or omissions at issue be part of the 'core' prosecutorial function. It is sufficient that they be directly related to the prosecutor's role in prosecuting violations of state law." *Id.* The court's analysis was essentially an analysis of the prosecutor's scope of employment.

In *Hardesty v. Stenchever*, 82 Wn. App. 253, 917 P.2d 577 (1996), Division One of our court had occasion to address the meaning of "performing . . . official duties" as used in RCW 4.92.060 and .075 in the course of deciding whether a state employee was entitled to the shield of the notice of claim statute, RCW 4.92.210(1). The plaintiff, Ms. Hardesty, had commenced an action for medical malpractice arising from her care at the University of Washington Medical Center. She failed to follow the procedural requirements of the notice of claim statute and as a result, the trial court dismissed her claims against the State and the medical center. But it denied the request of the treating physician, Dr. Stenchever—a State employee—for dismissal of the claim asserted against him.

On appeal, Dr. Stenchever argued that the actions alleged in the suit were performed within the scope of his official duties as a state employee, with the result that

17

chapter 4.92 RCW governed the suit against him just as it governed the suit against the State and the medical center. Ms. Hardesty conceded that the doctor's complained-of acts and omissions were performed "entirely within the scope of [Dr. Stenchever's] employment at the UW" but she argued (as Ms. Corter argues here) that "actions taken within a person's 'scope of employment' are not tantamount to actions taken within the scope of that person's 'official duties.'" *Id.* at 261. The court rejected her argument, holding that as a physician employed by the state, "treating patients is [Dr. Stenchever's] 'official' duty. He has no others." *Id.* Although involving a different context, then, *Hardesty* explicitly supports the county's and Risk Pool's argument that we should construe "scope of official duties" to mean "scope of employment."

Ms. Corter nonetheless argues that *LaMon v. City of Westport*, 22 Wn. App. 215, 588 P.2d 1205 (1978) supports her argument that the phrase "scope of official duties" should be construed, instead, as having a meaning similar to "under color of law." The plaintiffs, Mr. and Ms. LaMon, challenged the city of Westport's decision to indemnify its chief of police for defense costs incurred in an action the LaMons had commenced against him in federal court, in which they had claimed that the police chief refused to provide them police protection in violation of their right to equal protection.

Ms. Corter focuses on the appellate court's discussion in *LaMon* of why it refused to consider evidence that, after the LaMons' challenge to the city's indemnification decision was resolved in the trial court, the federal court in the underlying action found

18

liability and awarded compensation to the LaMons. *Id.* at 220. One reason offered by the appellate court for refusing to consider this new evidence was that the federal judge's finding would not render the city's indemnification of the police chief illegal:

> Plaintiffs admit in this petition that the United States District Court found that the police chief was acting under color of state law and his office when he engaged in the activity that led that court to find liability. As we have held above, the City of Westport has the power to indemnify its officials and employees for attorney fees incurred in suits resulting from an action or failure to act within the scope of the employee's or official's duties. The existence of the federal judgment thus does not per se render the action of the city council in indemnifying the police chief arbitrary or capricious.

*Id.* In addition to "does not per se render the action of the city council . . . arbitrary or capricious" being less than clear, the decision provides slim support for Ms. Corter for the additional reason that analysis elsewhere in the opinion casts doubt on whether the *LaMon* court had the breadth of "color of law" in the § 1983 context squarely in mind. After noting that the police chief merely omitted to provide police protection, the court stated,

> Nothing suggests that the actions of the police chief were outside the scope of his official duties. *Certainly had the city been a defendant in this action, it could not have escaped liability on the basis that the police chief was acting outside the scope of his duties.*

*LaMon*, 22 Wn. App. at 218-19 (emphasis added). In other words, the *LaMon* court equated "scope of official duties" with "scope of employment" and actions giving rise to respondeat superior liability.

Even more persuasive than this limited case law is the manifest intent of RCW 4.96.041 and the county code provisions when read as a whole—an intent markedly different from that behind the scope of "color of law" employed in 42 U.S.C. § 1983. By providing in RCW 4.96.041(2) that local governments may only authorize payment of legal defense costs for those officers, employees, and volunteers who are "performing or in good faith purporting to perform [their] official duties," RCW 4.96.041(1), the legislature clearly did not intend to allow local governments to pay the defense costs of rogue employees who abuse their authority to take action that does not serve any purpose of the local government. The statutory limitation in RCW 4.96.041(4) that a local government is liable for a judgment only when the defendant is found in the underlying action to have been "acting within the scope of [their] official duties" is likewise reasonably read to reflect a legislative intent that local governments not pay judgments imposed against rogue actors.

By contrast, the "under color of law" standard of 42 U.S.C. § 1983 is intended to provide broad redress for civil rights violations and to include a remedy where an individual acting outside the scope of the duties of his or her office inflicts damage through an abuse of state authority. As illustrated by the jury instructions given in Ms. Corter's federal lawsuit against her ex-husband, "under color of law" can include acts while purporting in *bad faith* to perform official duties, and when acting under "pretense of . . . governmental status." CP at 137. It can include actions that are prohibited by an

20

employee's government employer but are made possible by virtue of authority that the employee abuses.

*McDade v. West*, 223 F.3d 1135 (9th Cir. 2000) is illustrative, and factually similar to this case. Ms. West, one of the defendants, was an employee of the county's district attorney and used her access to the county's database to obtain confidential information about her husband's ex-wife that she provided to her husband, who was also named a defendant. In holding that Ms. West's actions were under color of law despite being a violation of county policy, the Ninth Circuit quoted *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476 (9th Cir. 1991): "[A]ctions taken under color of state law must be related to the state authority conferred on the actor, even though the actions are not actually permitted by the authority." *McDade*, 223 F.3d at 1141 (alteration in original) (quoting *Dang Vang*, 944 F.2d at 480).

After the Ninth Circuit determined that Ms. West's actions were under color of law and remanded, Ms. McDade and the Wests entered into a settlement agreement under which—as in this case—Ms. West assigned to Ms. McDade any claim that she had against her county employer for indemnification. When the district court entered judgment, it concluded that the county was not obliged to indemnify West. *McDade v. West*, 60 Fed. App'x 146, 147 (9th Cir. 2003) (unpublished opinion). While California law controlled whether the county was obligated to indemnify Ms. West and, unlike RCW 4.96.041, explicitly conditioned indemnification on a "'scope of employment'"

21

standard, *see id.* (quoting CAL. GOV'T CODE § 825(a)), we reach the same result given our construction of "scope of official duties" under RCW 4.96.041(4).

In order to find Mr. Groseclose liable in the underlying federal action, the jury had to have found under the court's instruction 9A that Mr. Groseclose "had no legitimate law enforcement purpose to access [the] incident report pertaining to [Ms. Corter]" and that "there was no public need for [Mr. Groseclose's] access to, and disclosure of, the sensitive personal medical information regarding [Ms. Corter]." CP at 138-39. It therefore found that he was not acting within the scope of his official duties within the meaning of RCW 4.96.041(4). Neither the county nor the Risk Pool are liable to indemnify him against the judgments. Having resolved the appeal on this basis, we need not reach the other issues raised by Ms. Corter.

### Attorney fees

The county requests an award of costs and fees pursuant to RAP 18.9(a) and RCW 4.84.185 on the basis that the appeal is frivolous. An appeal is frivolous if it presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal. *In re Marriage of Foley*, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). A civil appellant has a right to appeal under RAP 2.2, and all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. *See Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980).

22

No. 32769-8-III
*Wash. Counties Risk Pool v. Corter*

The appeal presents a case of first impression and the county paid an unallocated deductible without ever having occasion to inform Mr. Groseclose that it disclaimed liability for any future judgment. While it was Mr. Groseclose's duty to seek a county defense and indemnification—not the county's duty to explain his rights—we nonetheless decline to find Ms. Corter's appeal frivolous.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

23